Gaston, Judge.
 

 We have somewhat doubted whether the questions which have been discussed in this case, arise upon the record. The defendant pleaded generally
 
 non est factum;
 
 and specially that the supposed writing obligatory was given to secure payment unto the plaintiff, of the sum of money therein mentioned, as a consideration for the plaintiff to use his influence to procure a marriage between the defendant’s testator and Esther Hargrave. To this plea the plaintiff replied generally, and thereupon an issue was also joined. Upon the tidal of these issues, evidence was offered tending to establish the special plea, when the plaintiff objected to the introduction of any testimony for that purpose, upon the ground that the matter so pleaded, furnished no defence against the plaintiff’s action. The court overruled the objection, and instructed the jury, that if they found the matter so pleaded to be true, the plaintiff was not entitled to recover. Other objections were taken to a part of the evidence offered in support of the special plea, which were also overruled by
 
 *189
 
 the court. A verdict was found for the defendant upon
 
 both issues;
 
 the plaintiff moved for a new trial, which was refused; and judgment having been rendered for the defendant, the plaintiff appealed. The difficulty is in our seeing judicially, that the finding against the plaintiff on the general issue, was produced by any error of the court. All the objections taken, are to evidence applicable to the other issue — and perhaps it might have been, that the plea of
 
 non est factum
 
 was found because of insufficiency of testimony to establish the execution of the instrument, or of the erasure, or other matters properly submitted to the jury under
 
 that
 
 plea. The presumption on the record always is, that a verdict is supported by sufficient evidence until the contrary be shown. Now if this presumption be not removed here, and the instrument declared on was not in truth the deed of the defendant, the defence founded on the consideration of the pretended deed was immaterial, and the plaintiff could not be injured by any error, with respect, to the admission of evidence confined to that defence.
 

 Where the] general issue and a is pleaded*1 toanaction bond,If the
 
 *190
 
 plaintiff means to rest his case upon, the insufficiency of the special plea, he should demur'to it.
 

 
 *189
 
 Notwithstanding these doubts, and although it must be admitted that the record is far from being so explicit as it ought to have been, we believe ourselves warranted in examining and deciding the questions that have been made. We collect from the record, that the instruction of his Honor, as to the legal sufficiency of the special matter alleged, was given and received, and acted upon as applicable to
 
 both
 
 issues. If so, and there was error in this instruction; or if there was error in admitting improper evidence of that special matter — then the finding on the genera] issue, as well as on the special plea, may have been produced by means of such errors, and these will entitle the plaintiff to a reversal of the judgment, and a new trial of the issues. We feel ourselves called upon to remark, that the whole proceeding in relation to the special plea, has been irregular. If the plaintiff meant to rest his case upon the insufficiency of the plea, he should have demurred to it; and if the court sustained the demurrer, none of the evidence in support of the plea could have been admitted upon the trial of the general issue; for it is not
 
 *190
 
 competent for the defendant on the plea of
 
 non est factum,
 
 to insist upon any matter which avoids the deed, either at common law, or by statute, if it do not impeach the execution of the deed. Gilbert’s Law of Evi. 162. 5 Coke’s Rep. 119.
 
 Colton
 
 v.
 
 Goodridge, 2
 
 Bl. Rep. 1108.
 
 Harmer
 
 v. Wright, 2 Star. Ca. 35; (3 Eng. Com. Law Rep. 232.)
 
 Harmer
 
 v.
 
 Rowe,
 
 6 Maule & Sel. 146. If the court overruled the demurrer, and gave judgment for the defendant, the error if any, would have distinctly appeared upon the record. As the plaintiff did not demur to the plea, but traversed the matter pleaded, he could not object to evidence which was relevant to support the plea; but unless other matter was brought forward, proper to be received under the plea of
 
 non est factum,
 
 and he proved the due execution of the writing obligatory, he was entitled to a verdict upon the general issue. If the jury found for him upon the general issue, and for the defendant upon the other, the plaintiff might yet have contested the sufficiency of the special plea, by praying judgment
 
 non obstante veredicto.
 
 It would seem that without regard to forms, the parties contested all the matters in controversy, as well those of law as of fact, before the jury; contenting themselves with praying from the court instructions upon the former, so as to enable the jury to come to a correct conclusion. Perhaps in this case, no mischief has resulted from the irregular course pursued; but it ought tobe avoided as tending to blend functions, which the stability of our institutions requires should be carefully kept distinct.
 

 If the plaintiff does not demur to the special plea, but traverses the matter pleaded, he cannot object to evidence which is relevant to support the plea.
 

 If the jury find for the plaintiff upon the general issue, and for the defendant upon the special plea, the plaintiff may yet contest the sufficiency of the special plea, by praying judgment
 
 non ob-stante vere-
 
 dicto,
 

 The main question in disputé is, whether the consideration on which this instrument was executed, not appearing on the face of it, but alleged by plea as matter
 
 dehors
 
 the instrument, and found to be true, does in law avoid the instrument. Contracts promising rewards to a person, in-order to obtain the exertion of any influence which he may possess over one of the parties to a contemplated marriage to bring about the marriage, and bonds entered into to secure the performance of such contracts, have for more than a century back, been declared void in the courts of equity; and under the name of marriage-brocage agreements, and marriage-brocage bonds, constitute a well
 
 *191
 
 known subject of the jurisdiction of such courts. It was not, however, until the case of
 
 Potter
 
 v.
 
 Hale,
 
 or
 
 Potter
 
 v.
 
 Read,
 
 (as it is indifferently termed,) and then after much litigation and difference of opinion, that this doctrine was authoritatively established. In that case, such a bond was ordered to be delivered up and cancelled, by the Master of the Rolls; his decree was reversed on appeal, by Lord Chancellor Somers-; but on appeal to the House of Lords, the decree of reversal was itself reversed, and the original decree affirmed. It is not strange, as the jurisdiction over such bonds was first effectually asserted in a court of equity,, that most of the cases subsequently occurring on the same subject, and to be found in the books, were brought in a court of equity. But after the principle of these adjudications was perfectly settled, it could not but be that the same principle would be asserted in a court of law, where-cver the forms of legal proceedings gave occasion . for applying it. These engagements had been denounced, not because of the imposition or oppression practised upon one of the parties to them, but because of their repugnancy to public policy. They were condemned as mischievous to the community, inasmuch as they encouraged hireling match-makers, invaded the peace of families, controlled the freedom of choice, and produced unequal and unhappy marriages. So unequivocally had their condemnation rested upon the ground of public mischief, that it was held that they did not admit of subsequent confirmation by the party aggrieved:
 
 he
 
 could not give to them validity — for the common weal forbade them.
 
 Shirley
 
 v.
 
 Martin,
 
 3 P. Wms. 74, n. 1. It cannot be doubted therefore, since the conclusive establishment of this principle, that if an action be brought at law, to recover damages for the breach of a covenant or promise, to exert this forbidden influence--or an action to recover money upon an assump-sit, founded on such illegal consideration — or an action on a bond, with condition expressing this'illegal purpose— in all these cases, the court of law must pronounce the undertaking, the consideration, and the condition against law, and turn the plaintiff out of court. The
 
 first
 
 object of all law, is the public good; and no court will enforce
 
 *192
 
 private engagements, which it judicially sees are repugnant to the public good.
 
 Ex turpi causa non oritur actio.
 
 These positions seem to be clearly laid down by the elementary writers, and are sanctioned by the decisions to which they refer. 1 Chitty’s Plead. 511,
 
 et seq.
 
 Com. on Contracts, Pr. 1 ch. 3, page 62. 2 Thos. Coke, 24, note p.
 
 Mitchell
 
 v.
 
 Reynolds,
 
 1 P. Wms. 181.
 
 Lowe
 
 v.
 
 Peers,
 
 4 Bur. 2225. They are recognised by Lord Hardwick, in
 
 Smith
 
 v.
 
 Aykewell,
 
 3 Atkins, 566, who upon a motion for an injunction to restrain the defendant from bringing an action on a promissory note, given by the plaintiff for £2000, which was charged by the bill, and that charge supported by affidavit, to have been given on an undertaking to procure him a marriage with a lady — or to restrain the defendant from assigning the note, made the order to restrain the defendant from endorsing or assigning the note, but would not make the order to prevent him from
 
 proceeding at law
 
 — evidently because by endorsing the .note, the plaintiff might be shut out from his defence; but in an action, by the payee, the defence would be as effectual at law as in equity.
 

 But it might well have been questioned, whether on a bond
 
 simply
 
 for the payment of money, it was competent for a defendant to allege by
 
 plea,
 
 that the consideration of such bond was illegal, because of repugnance to public policy, and thereby avoid the bond. This was at one time a much vexed question, and accounts for the observation made by Lord Talbot, in
 
 Law
 
 v.
 
 Law, 3
 
 P. Wms. 394, that marriage-brocage bonds were good at law. It must not, however, be regarded as one completely settled. The leading case on the subject, the authority of which has never been questioned, either in England or in this country, is that of
 
 Collins
 
 v.
 
 Blantern, 2
 
 Wilson, 347. That case distinctly holds, that a contract to tempt a man to transgress the law — to do that which is injurious to the community, is void by the common law; and that when a bond is for the payment of a sum of money, the obligor may show by plea, that the payment was to be made on a vicious consideration — vicious either on common law principles, or because of statutory enactments; and that this
 
 *193
 
 shown, the writing obligatory is to be adjudged void. The authority of
 
 Collins
 
 v.
 
 Blantern
 
 was in the strongest terms, by the former Supreme Court of this state, in
 
 Cameron
 
 v.
 
 M‘Farland,
 
 2 Car. Law Repos. 415, who, in conformity to it, held that the common law does not sanction any obligation, founded upon a consideration which contravenes its general policy. This impresses upon the transaction an inherent defect, which cannot be removed by the most deliberate consent of the parties, or the utmost solemnity of external form. The principle has been invariably since acknowledged in the English cases, down to the present day.
 
 Paxton
 
 v.
 
 Popham,
 
 9 East, 408.
 
 Pole
 
 v.
 
 Harrabin,
 
 Ibid. in note.
 
 Greville
 
 v.
 
 Atkins,
 
 9 B. & C. 462 ; (17 E. C. L. R. 421.) In the case of
 
 Thrale
 
 v.
 
 Ross,
 
 3 Bro. 57, where an injunction was applied for, to stay trial on a bond, because it was alleged to be given on a vicious considepatisí^ftfiffíhacur-ing the resignation of an office, or office — Lord Tiiurlow refused the inunction, because jjhe matter ought to
 
 be pleaded
 
 at law, artd/|l^(^siM)j^liej|e tried ; and in argument it was state!, tiiat in case offma|-riage brocage, there could be but litlL be pleadable at law, although it had been so^iiefraed. In
 
 Fytche
 
 v.
 
 Bishop of London,
 
 1 East, 487, was held, that if a bond were given on account of a bad consideration, this would avoid it at law, as well as in equity. In the case of
 
 Vauxhall Bridge Company
 
 v.
 
 Spencer and others,
 
 1 Jacob, 64, (4 Con. Ch. Rep. 28), where objection was taken to the validity of bonds, being against public policy, the Yice Chancellor ordered the validity of the bonds to be tried at law; and Lord Eldon, affirming the order, declared that all the objections may be raised upon the
 
 pleadings there,
 
 in the same manner as
 
 here;
 
 and in matters of this nature, both courts of law and equity exercise jurisdiction upon the same principles. In
 
 Cock
 
 v.
 
 Richards,
 
 10 Ves. 440, Lord Eldon expressly states, that the courts of law now do exercise jurisdiction on marriage-brocage bonds, and such contracts. In
 
 Westmeath
 
 v.
 
 Westmeath,
 
 1 Dow, N. S. 519, before the House of Lords, on a bill to set aside a deed of separation between hus
 
 *194
 
 band and wife, on the ground of being against public policy, Lord Eldon considered the question of public policy, as resting on the same grounds, both at law and in equity; that the question ought to be tried at law, and the case put in such a form, that it might be brought before the House of Lords by writ of error. On full consideration, then, of this question, we feel ourselves warranted and bound to decide, that the matter specially pleaded by the defendant-, could be rightfully pleaded to this action, and being found to be true, the plaintiff’s action was barred, and the defendant entitled to judgment.
 

 An objection was made to the admission in evidence, of the copy of a letter, purporting to have been written by John W. Blackwell to the defendant, in relation to the'bond in question — first, because such copy was not sufficiently identified; and, secondly, because the letter itself was not pertinent to the issue. It is to be borne in mind, that the original, of which that offered was alleged to be the copy, was delivered to the plaintiff on the 20th December, 1834; that this action was brought in February, 1835; there was no evidence to show or to raise the probability that the original was not in existence, and in the plaintiff’s possession, and he was notified to produce it on the trial. Under these circumstances, the proof of the copy was such, as in our opinion authorized its being read. Stronger evidence could not have been given, unless the writer had been himself examined; and it is admitted, that he could not have been examined, as being a party in interest in the suit. The letter was pertinent for the purpose for which it was read, and the jury was instructed that it was evidence for that purpose only. A letter sent to one of the parties, cannot be given in evidence to prove the facts stated in it, but if the party to whom it is addressed, write an answer thereto, such answer can be read against him, and the letter must also be admissible to explain the answer. The letter and the answer form together a written ‘conversation.
 

 An objection was also made to the admission in evidence, of the marriage settlement. It was so unimportant
 
 *195
 
 evidence for the defendant, as to raise a doubt whether it was not pressed for some purpose not avowed, and not legitimate. But we cannot say, that the fact of the plaintiff having been elected by the bride, as one of the trustees in her marriage settlement, did not show that she reposed confidence in his friendship, and had some
 
 tendency
 
 to strengthen the allegation of an influence over her. It was
 
 harely
 
 admissible, but we believe it was admissible for this purpose; and the jury were cautioned that it was evidence for no other; and it was for them to decide as to the
 
 effect
 
 which it had, even in supporting that allegation.
 

 We are of opinion that there is no error in the judgment, and that it must be affirmed, with costs.
 

 PeR Ctjkiam:. Judgment affirmed,