LEVIN v. GLADSTEIN.

(Filed November 7, 1906).

*Judgment of Sister State—Fraud as a Defense—Justice's Jurisdiction—Equitable Defenses.*

1. While a judgment when sued upon in another State cannot be impeached nor attacked for fraud by any plea known to the common-law system of pleading, yet upon sufficient allegation and proof, defendant is entitled, in a court of equity, to enjoin the plaintiff from suing upon or enforcing his judgment.

2. The judgment of a sister State will be given the *same faith* and credit which is given domestic judgments.

3. In an action upon a judgment of a sister State the defendant may set up in his answer the defense that the judgment was obtained by fraud practised upon him, and such equitable defense may be interposed in a justice's court.

4. While a justice's court has no jurisdiction to administer or enforce an equitable cause of action, a defendant may interpose an equitable defense in that court.

ACTION by Philip Levin and another against M. Gladstein, heard by *Judge G. S. Ferguson* and a jury, at the March Term, 1906, of the Superior Court of DURHAM.

 This was a suit upon a judgment obtained in the Superior Court of Baltimore City, Maryland. Personal service was had upon defendant while in Baltimore. Action was insti-

tuted upon said judgment before a justice of the peace of Durham County, and from a judgment therein, defendant appealed to the Superior Court.

At the beginning of the trial in the Superior Court counsel for defendant stated he admitted the regularity of the judgment sued upon and withdrew all pleas and defenses to said action, save and except that the judgment upon which the action was brought was procured by a fraud practised by plaintiffs upon the defendant, and that he insisted upon that plea alone. Thereupon the plaintiffs moved for judgment for that the judgment rendered by the court of Maryland was not open to attack in this action for fraud. Motion overruled, and plaintiffs excepted.

His Honor held that the burden of proof was upon the defendant, and he proceeded to introduce testimony. Mr. Gladstein testified that he was the defendant in the case; that he knew Philip Levin and Simon Levin, and had bought goods of them. That some time prior to his going to Baltimore he bought a bill of goods of plaintiffs, but had shipped some of them back to Baltimore because they were not up to the sample. That plaintiffs had refused to take the goods out of the depot in Baltimore. That upon his visit to Baltimore summons was served upon him in the action brought there by the plaintiffs; but after said summons was served upon him, and before the return day, he saw one of the plaintiffs and had an interview with him at the store of L. Singer & Son, during which interview plaintiffs agreed with him to withdraw said suit and return the goods to him at Durham, provided he would, upon their receipt, pay the plaintiffs a sum of money which they agreed upon, to-wit, $133, and freight and storage not to exceed $3. That relying upon this agreement he returned to Durham and made no defense to the action. Plaintiffs never returned the goods to him at Durham. That the first time he knew of the judgment was when called upon by attorneys for plaintiffs to pay said judgment.

There was testimony contradicting defendant.   After hearing testimony from both parties, the Court submitted the following issue to the jury: "Was the alleged judgment rendered for $143, bearing date 27 April, 1904, in the Superior Court of Baltimore City, in favor of Philip Levin and Simon Levin, copartners, trading as P. Levin & Co., against M. Gladstein, obtained by the fraud of plaintiffs?"   To which the jury responded "Yes."   Judgment was thereupon rendered that the plaintiffs take nothing by their action, and that the defendant go without day, etc.   Plaintiffs excepted and appealed.

*Biggs & Reade* for the plaintiffs.
*Winston & Bryant* for the defendant.

CONNOR, J., after stating the case: Two questions are presented upon the plaintiff's appeal: First. Can the defendant, in the manner proposed herein, resist a recovery upon the judgment rendered against him by the Maryland court?   Second. If so, has the justice of the peace jurisdiction to hear and determine such defense?   The plaintiffs, relying upon the provision of the Constitution of the United States, Art. IV, sec. 1, that "Full faith and credit shall be given in each State to the public acts, records and judicial proceedings of every other State," earnestly contend that the defense is not open to the courts of this State.   That the remedy for the fraud in procuring the judgment, if any, must be sought in the courts of Maryland.   The well-considered brief of plaintiffs' counsel thus states the question involved in the appeal: "The case presents the question of the right of a defendant to avail himself of the plea of fraud as a defense to an action in one State based upon a judgment obtained in a sister State."

When a judgment rendered by the court of one State becomes the cause of action in the court of another State,

and the transcript made in such State, duly certified, as prescribed by the act of Congress, is produced, it imports verity and can be attacked for only one purpose: The defendant may deny that the Court had jurisdiction of his person or of the subject-matter, and for this purpose may attack the recitals in the record. / Bailey on Jurisdiction, secs. 198-9. Jurisdiction will be presumed until the contrary is shown. If not denied, or when established after denial, defendant cannot interpose the plea of *nil debit.* This was held in *Mills v. Duryee,* 7 Cranch. (11 U. S.), 480, and has been uniformly followed by both State and Federal courts. 2 Am. Lead. Cases, 538.

In *Christmas v. Russell,* 72 U. S., 290, *Mr. Justice Clifford* said: "Substance of the second objection of the present defendant to the fourth plea is that, inasmuch as the judgment is conclusive between the parties, in the State where it was rendered, it is equally so in every other court in the United States, and consequently that the plea of fraud in procuring the judgment is not a legal answer to the declaration. Principal question in the case of *Mills v. Duryee* was whether *nil debit* was a good plea to an action founded on a judgment of another State. Much consideration was given to the case, and the decision was that the record of a State court, duly authenticated under the act of Congress, must have in every other court of the United States such faith and credit as it had in the State court from whence it was taken, and that *nil debit* was not a good plea to such an action." The learned Justice proceeds to say: "Domestic judgment, under the rules of the common law, could not be collaterally impeached or called in question if rendered in a court of competent jurisdiction. It could only be done directly by writ of error, petition for new trial, or *by bill in chancery.*"

It will be found, upon careful examination of *Hanley v. Donoghue,* 116 U. S., 1 (59 Md., 239), that the question under consideration here was not involved. It is true that,

in the discussion, *Mr. Justice Gray* uses the language cited by counsel, which excludes the right of the defendant to impeach the judgment "for fraud in obtaining it." So, in *Cole v. Cunningham,* 133 U. S., 107, *Chief Justice Fuller,* after quoting the language of the Constitution, says: "This does not prevent an inquiry into the jurisdiction of the court, in which judgment is rendered, to pronounce the judgment, nor into the right of the State to exercise authority over the parties or the subject-matter, nor whether the judgment is founded in and impeachable for a manifest fraud. The Constitution did not mean to confer any new power on the States, but simply to regulate the effect of their acknowledged jurisdiction over persons and things within their admitted territory." The learned *Chief Justice* relies upon the same line of cases cited by *Judge Gray.* Neither of them was discussing the question here presented, nor was it presented by the record in those cases.

The case of *Dobson v. Pearce,* 12 N. Y., 156, was cited in *Cole v. Cunningham*—and, as we shall see later, was approved. In *Maxwell v. Stewart,* 89 U. S., 77, the Court simply reiterated the doctrine announced in *Mills v. Duryee, supra,* that the plea of *nil debit* could not be interposed in an action upon a judgment. *Bissell v. Briggs,* 9 Mass., 462; Bailey on Jurisdiction, 191, 192. This Court in *Miller v. Leach,* 95 N. C., 229, by *Ashe, J.,* said that the judgment of a sister State was put by the Constitution upon the same footing as domestic judgments, precluding all inquiry into the merits of the subject-matter, "but leaving the questions of jurisdiction, *fraud in the procurement,* and whether the parties were properly before the Court, open to objection," citing *Mills v. Duryee, supra.* See, also, *Coleman v. Howell,* 131 N. C., 125. It is elementary learning that this plea was not proper in actions founded upon a specialty or a record. Shipman Com. Law Pl., 196. But if plaintiff, in an action on a record, instead of demurring to the plea,

accepts it and joins issue, the defendant is at liberty to prove any and every special matter of defense which might be proved under the same plea in debt. For the plaintiff, by accepting the plea, founds his demand solely upon the defendant being indebted, and thus waives the estoppel, or conclusive evidence of the fact, etc. *Overman v. Clemmons,* 19 N. C., 185; Gould's Pl., 287. Hence, we find that in all of the cases in which the plea of *nil debit* was entered, the defendant demurred, and the decision was on the demurrer, which was uniformly sustained. *Mills v. Duryee, supra; Maxwell v. Stewart, supra; Benton v. Burgot,* 25 Pa., 240; *Carter v. Wilson,* 18 N. C., 362; *Knight v. Wall,* 19 N. C., 125. In *Allison v. Chapman,* 19 Fed. Rep., 488, *Nixon, J.,* says: "The subject is fully discussed, * * * and the conclusion is reached that the allegation, *in a plea,* that a judgment was procured through fraud, is not a good common-law defense to a suit brought upon it in the same or a sister State." This conclusion is fully supported by all of the authorities, and in this we concur with the learned counsel for the plaintiff. Notwithstanding the well-settled rule that the judgment when sued upon in another State cannot be impeached or attacked for fraud by any plea known to the common-law system of pleading, it is equally clear that upon sufficient allegation and proof defendant is entitled, in a court of equity, to enjoin the plaintiff from suing upon or enforcing his judgment.

*Pearce v. Olney,* 20 Conn., 544, was "a bill in chancery praying for an injunction against the *further prosecution of an action at law.*" Defendant sued plaintiff in the Superior Court of New York City and obtained service upon him. Plaintiff saw and made an arrangement with defendant's attorney by which it was agreed that no further action would be taken in the case until plaintiff should receive further notice from him. Relying upon said agreement, plaintiff did not employ any counsel and did not appear before said court,

believing that said suit was to be no further prosecuted against him. Defendant, in violation of said agreement, procured judgment against plaintiff. Defendant, some time thereafter, brought suit in the court having jurisdiction in Connecticut, and at the time of filing the bill said suit was pending in said court. Defendant relied upon the constitutional provision, insisting that to enjoin him from prosecuting his action on the judgment, would be to deny "full faith and credit to the judicial proceeding" in New York. The Court said: "It is insisted that under the Constitution of the United States   *   *   *   it is not competent for the Court to impeach the judgment of the Superior Court of New York; it being shown that the Court had jurisdiction of the cause, by the regular service of process on the defendant in that suit. And cases are cited to sustain this position. This doctrine is correct enough, no doubt, properly understood and applied; but it has no application here. There is no attempt to impeach the validity of the New York judgment. In granting an injunction against proceedings at law, whether in a foreign or domestic court, there is no difference; the court of equity does not presume to direct or control the court of law; but it considers the equities between the parties and restrains him from prosecuting an action." A perpetual injunction was granted. The case had a further history. The defendant in the equity suit and plaintiff in the judgment assigned the judgment to one Dobson, who brought suit on it in the Superior Court of New York against Pearce, the defendant in the judgment. Defendant set up by way of defense, the record of the equity suit in Connecticut and the injunction granted therein. Dobson sought to avoid the injunction. The cause was ably argued and carefully considered by the Court. It was said: "So, fraud and imposition invalidate a judgment as they do all acts; and it is not without semblance of authority that it has been suggested that, at law, the fraud may be alleged whenever the party seeks to

avail himself of the results of his own fraudulent conduct by setting up the judgment, fruits of his fraud. But whether this is so or not, it is unquestionable that a court of chancery has power to grant relief against judgments when obtained by fraud." The Court proceeded to say that under the judiciary system in New York, permitting equitable defenses to be set up in the answer, whether the fraud could have been pleaded or not in an action at law, it could be set up, as an equitable defense to defeat a recovery upon a fraudulent judgment. The Court held that the injunction granted in Connecticut established the fraud, and that plaintiffs could not recover. As we have seen, this case was cited with approval in *Cole v. Cunningham, supra.* It is cited with approval by the Chancellor in *Davis v. Headley,* 22 N. J. Eq., 123, in which it is said: "That the courts of equity will set aside judgments of their own, and other States, for fraud practised in procuring them. * * * It will not lend its aid to enforce a judgment obtained by fraud, when the fraud is shown. Complainant must come with clean hands in the matter on which relief is sought." The doctrine is well stated in *Payne v. O'Shea,* 84 Mo., 129 (cited in Black on Judgts., sec. 919): "A proceeding in the nature of a bill in equity will lie to enjoin and avoid a domestic judgment obtained through fraud, and like remedies exist and may be resorted to against judgments obtained in other States, when sued on in this State. The fraud, however, for which a judgment will be enjoined must be in the procurement of the judgment." Nor does the constitutional provision stand in the way of such proceeding. Usually, the power of a court of equity to interfere in the enforcement of judgments obtained by fraud, is invoked to restrain the plaintiff, in such judgments, from issuing or enforcing execution. The theory was, as we have seen, that the Court of Equity did not call into question the integrity of the judgment, but by its decree operated *in personam* upon the plaintiff, enforcing the decree

by punishing for contempt disobedience to it.  But when the judgment, as in *Olney v. Pearce, supra,* was made the cause of action at law, equity enjoined the plaintiff, shown to be guilty of the fraud, from prosecuting the action.  Our Equity Reports contain many illustrations of the practice. *Hadley v. Rountree,* 59 N. C., 107.                    ,

The underlying principle is that the judgment of a sister State will be given the *same faith* and credit which is given domestic judgments.  It is contended, however, and with force, that the "faith and credit" to be given such judgment is measured by the law of the State in which it is rendered. We find upon examining the decisions made by the Maryland Court that in that State a court of equity will enjoin the enforcement of a judgment obtained by fraud.  We had no doubt that such was the law in that State.  In *Little v. Price,* 1 Md. Ch., 182, the Chancellor says: "The object of an injunction to stay proceedings at law, either before or after judgment, is to prevent the party against whom it issues from availing himself of an unfair advantage resulting from accident, mistake, *fraud* or otherwise, and which would, therefore, be against conscience.  In such cases the Court will interfere and restrain him from using the advantage which he has improperly gained."  Citing Story's Eq., sec. 885, *et seq.*  In *Wagner v. Shank,* 59 Md., 313, it appears that when the complainants were summoned in the original actions, they employed counsel to defend them.  The counsel saw plaintiff in the actions, and he concluded to dismiss the cases and executed an agreement to do so.  Counsel notified his clients of the agreement and "they supposed the matter was finally disposed of and gave themselves no further concern about it."  The plaintiff, without notice to counsel or parties, had the magistrate to enter judgments, in one thousand and two hundred and ninety-six cases, amounting to $127,836, and $2,386 cost.  *Miller, J.,* after reciting the facts, says: "These facts alone make a plain case for relief

in equity.  *  *  *  As to the jurisdiction of a court of equity to pass the decrees, appealed from, we entertain no doubt.  There are prayers in most of these bills, not only that these judgments may be perpetually enjoined, but that they may be cancelled."  After citing authorities sustaining the right of complainant to have the relief prayed, he concludes: "And these decisions are founded on the true principles of equity jurisprudence, which is not merely remedial, but is also preventive of injustice."  Concluding a very able opinion, he says: "The strong arm of a court of equity has protected the complainants, and the decrees in their favor will be affirmed."  It is thus apparent that the judgment obtained by the fraud of plaintiffs, as found by the jury, would be open to attack in the courts of Maryland upon the universally accepted principles of equity jurisprudence invoked in the courts of this State, and in giving the defendant relief we are giving the judgment the same "faith and credit" which it has in that State.  Mr. Bailey, in his work on Jurisdiction, 202-203, notes the language of *Judge Gray* in *Christmas v. Russell, supra,* and *Chief Justice Fuller* in *Cole v. Cunningham, supra,* saying: "However, it should be conceded that whatever may have been the rule in the Court prior to the decision in *Cole v. Cunningham,* that the rule there stated must be taken as the present doctrine of that Court."  He notes the diversity in the several States, saying that in Maryland the Court has not followed the rule in *Cunningham's case,* citing *Hambleton v. Glenn,* 72 Md., 351.  In that case the question was whether in that State the judgment rendered in Virginia could be *collaterally attacked* for fraud.  That is not the question here, but whether in Maryland the judgment of its own courts could be enjoined in equity for fraud; and, as we have seen, it may be.  We are not seeking to know what the courts of Maryland would permit to be done if a North Carolina judgment was sued upon there, but what they will permit to be done when one of their own judgments is sued upon and attacked for fraud.

The plaintiff says, however this may be, the defendant can have this relief only in Maryland; that he must go into that State and attack the judgment or enjoin the plaintiff. Mr. Freeman says: "If the judgment was procured under circumstances requiring its enforcement to be enjoined in equity, the question will arise whether these circumstances may be interposed as a defense to an action on the judgment in another State. Notwithstanding expressions to the contrary, we apprehend that in bringing an action in another State, the judgment creditor must submit to the law of the forum, and must meet the charge of fraud in its procurement, when presented in any form in which fraud might be urged in an action on a domestic judgment. If, in the State in which the action is pending, fraud can be pleaded to an action on a domestic judgment, it is equally available and equally efficient in actions on judgments of other States. * * * It is true that two of the decisions of the Supreme Court of the United States contain the general statement that the plea of fraud is not available as an answer to an action on a judgment (citing *Christmas v. Russell* and *Maxwell v. Stewart, supra*). We apprehend, however, that these decisions are inapplicable in those States in which the distinction between law and equity is attempted to be abolished, and equitable as well as legal defenses are, when properly pleaded, admissible in actions at law." /Freeman on Judgments, sec. 576./ If those States, in which equitable remedies were administered only by courts of equity, enjoined proceeding at law upon a judgment obtained by fraud, why should not, in those courts administering legal and equitable rights and remedies in one court, and one form of action, the defendant be permitted to set up his equitable defense to the action on the judgment? The question is answered by the case of *Gray v. Bicycle Co.,* 167 N. Y., 348. The action was brought on a note which the Court held was merged into a judgment rendered in Indiana. It was alleged that the judgment was pro-

LEVIN v. GLADSTEIN.

cured by fraud. *Vann, J.*, said that it was admitted that
"even a foreign judgment may be successfully assailed for
fraud in its procurement.  *  *  *  It was not necessary
to go into the State of Indiana to obtain relief from the
judgment through its courts, for, as we have held, a court
from one State may, when it has jurisdiction of the parties,
determine the question whether a judgment between them,
rendered in another State, was obtained by fraud, and, if so,
may enjoin the enforcement of it, although its subject-matter
is situated in such other State.   The assertion of the foreign
judgment as a bar in this action was an attempt to enforce it
indirectly, and it was the duty of the trial Court to send
the case to the jury with the instruction that if they found
the judgment was procured by fraud, it could not be asserted
as a bar in this State." *Davis v. Cornue*, 151 N. Y., 172
(179).  The same rule is laid down by Black. In some of
the States, when the formal distinction between law and
equity is abrogated, the law allows equitable defenses to be
set up in an action at law.   Hence, in those States, when
the suit is brought upon a domestic judgment, the defendant
is allowed to plead any circumstances of fraud which would
have justified a court of equity in interfering in his behalf.
Now when the same judgment is made the basis of an action
of another State, he ought to be allowed the same latitude of
defense.   For if it were otherwise, the foreign court would
be required to give greater faith and credit to the judgment
than it is entitled to at home, which the Constitution does not
require.  Black on Judgments, sec. 918. That the defense
made by defendant may, under our Code, be set up by way
of answer, is well settled. The cases in point are collected in
Clark's Code (3 Ed.), p. 238.

The remaining question is whether the defense is available
to defendant in a justice's court.   It is said that the remedy
of defendant being an injunction against proceeding with the
action, resort must be had to the Superior Court having

equitable jurisdiction. The question is not free from diffi-culty. It would seem, however, that in view of the frequent decisions of this Court that while a justice's court has no jurisdiction to administer or enforce an equitable cause of action, a defendant may interpose an equitable defense in that Court, his Honor correctly submitted the issue raised by the defense. In *Lutz v. Thompson,* 87 N. C., 334, the defendants sought to prevent a recovery upon a bond by showing that it had been executed in accordance with certain agreements, and that by reason thereof it would be inequita-ble to enforce one part of it and leave the other part unful-filled. The objection was made that this defense, being equita-ble in its character, could not be interposed in a justice's court. *Ruffin, J.,* said: "Whenever such a court has juris-diction of the principal matter of an action, as on a bond, for instance, it must necessarily have jurisdiction of every inci-dental question necessary to its proper determination. And though it cannot affirmatively administer an equity, it may so far recognize it as to admit it to be set up as a defense."

In *McAdoo v. Callum,* 86 N. C., 419, originating in a jus-tice's court for the purpose of ousting defendants, tenants of the plaintiff, the defendants set up by way of defense a con-tract for a renewal of the lease, etc. To the objection that the Justice had no jurisdiction to hear such defense, *Smith, C. J.,* said: "While this provision is not itself a renewal so as to vest an estate in the defendants for the successive term, it gave them an equity, which, while it cannot be specifically enforced in the court of a justice, will be recognized as a defense to a proceeding for the ejectment of the defendants." *Hurst v. Everett,* 91 N. C., 399. We can see no good reason why the defendant may not set up, by way of defense, the facts which show that the judgment, plaintiff's cause of action, was obtained by fraud practised upon him. *Bell v. Howerton,* 111 N. C., 73 ; *Holden v. Warren,* 118 N. C., 326 ; *Vance v. Vance,* 118 N. C., 865. These and other cases in

our reports illustrate the rule of practice, that equitable defenses may be set up in the court of a justice of the peace.

In *Earp v. Minton,* 138 N. C., 202, the suit was not upon a judgment, but the judgment, in an action between the plaintiff and another party, one Cranor, was offered in evidence to sustain plaintiff's title. The judgment when so offered could not be attacked collaterally, as shown both upon reason and the authorities cited. In our case, the defendant, if in the Superior Court, would have pleaded the fraud in bar of plaintiff's recovery, just as if the suit had been upon a bond under seal obtained by fraud. We can see no good reason why he may not, for the same purpose, set it up in the justice's court. It would be incompatible with our conception of remedial justice under The Code system, to require the defendant to submit to a judgment and be compelled to resort to another court to enjoin its enforcement. This is one of the inconveniences of the old system which was abolished by the Constitution and the adoption of The Code practice. We but follow the line marked by *Ruffin, J.,* when he announced the general principle in *Lutz v. Thompson, supra.*

We find no error in the ruling of his Honor in regard to the burden of proof or probative force of the testimony required to establish the defense.

We have examined the authorities cited by plaintiffs' counsel, and, while there is, to say the least, some apparent conflict, we are of the opinion that the conclusion reached by us is in accordance with the weight of authority and those best sustained by reason.

There is

No Error.