## MITCHELL et al. v. SAN ANTONIO PUBLIC SERVICE CO. (No. 8162.)

Court of Civil Appeals of Texas. San Antonio. March 13, 1929.

Rehearing Denied April 3, 1929.

E. C. Zellner and Tyler & Hubbard, all of Belton, for plaintiffs in error.

Templeton, Brooks, Napier & Brown and C. R. Kennon, all of San Antonio, for defendant in error.

SMITH, J. In December, 1920, Pauline Jennings, a 15 year old girl, was injured in a collision between an automobile in which she was a passenger and a street car operated by the San Antonio Public Service Company, in the city of San Antonio. At that time she had a legal guardian, who resided in Bell county, Tex., but she was then residing in San Antonio with her 20 year old sister, Anna, who afterwards married John V. Mitchell. No others of her family were then living. The two girls were employed at the time in San Antonio, and were together, with others, in the automobile at the time of the accident.

All the victims of the accident, including Pauline, were carried from the scene of the accident to the offices of the Public Service Company, and from there the two girls went to their apartment for the night. A few days later, Pauline, the younger, went to a hospital in San Antonio, remained there under treatment for about a month, went to Hondo, in Medina county, and was under some treatment there until in May, when she returned to San Antonio. In the meantime the question of her claim against the Public Service Company came up for consideration. The two girls engaged County Judge Ralph Noonan, of Medina county, a reputable attorney, to prosecute and settle the claim, and Anna, the older sister, and her fiancé, went to Belton, and, explaining the situation to the girl's guardian, requested him to resign his guardianship in order that they might negotiate the settlement with Judge Noonan's assistance. The guardian, after consulting his attorneys, refused to resign, and Anna and Mitchell returned to San Antonio, where the negotiations for settlement proceeded, the two girls, Mitchell, and

Judge Noonan acting together for Pauline, and one of its claim agents for the Public Service Company. The claim agent refused to make any settlement, however, until Pauline was examined by two physicians of her selection, and one of his, to determine her condition, and to this end the Jennings selected Drs. Ogilvie and Braunnagel, who, with the company physician, Dr. Watts, examined the injured girl, and reported that "we could find no injury or symptoms that any results of an injury existed. The subjective symptoms of her pain over the lumbar spines, and confined only to this region, were indefinite, vague, and not in relation with injury at this point. The X-ray pictures taken by Doctor Hamilton showed no structural change or misplacement."

Upon this report of the physicians the parties reached a settlement whereby the Public Service Company agreed to pay the injured girl $500 and her doctors' and attorneys' fees and hospital bills. The claim agent explained, however, that because of the claimant's minority the settlement should be consummated through court action in order to bind her, and he was not willing to submit the matter to any local courts. This difficulty was met by an agreement that the company pay the claimant $450 at the time, which was done, and $50 in St. Louis, Mo., to which latter point the claimant and her sister expected to go in a few days. The older sister and Mitchell married a few days after the settlement was agreed upon, and the three went on to St. Louis, en route to Rantoul, Ill., where they were to reside. Following up their agreement made with the claim agent before leaving San Antonio, the party sought out an agent of a St. Louis traction company, who piloted them to a local justice of the peace through whose court a friendly settlement was made, judgment was entered, the final payment of $50 was paid over to the elder sister, who, with her husband and the younger sister, executed and delivered a release of the company from all liability for the accident, and indorsed the satisfaction of the judgment on the margin thereof. They then resumed their journey to their new home in Illinois. The injured girl was soon put under treatment again, and, although she recovered sufficiently to enable her to work for some months, her improvement did not continue, the condition of her health grew worse, and after nearly three years she developed tuberculosis, from which she died in June, 1928, 7½ years after the accident in question. It appears that her father, and probably an older sister, had died of the same malady previous to the accident.

Prior to the settlement of the claim as above outlined, the legal guardian of the two girls filed suit on the claim in a district court of Bexar county against the Public Service Company, and this suit was pending when the settlement was made. The suit was disregarded by the company and the injured girl and her sister, and was afterwards dismissed for want of prosecution. Several years later, however, the two girls instituted the instant suit upon the claim. The Public Service Company interposed the previous settlement and the Missouri judgment as a defense, as well as the usual defenses on the merits. After a trial the court below directed a verdict in favor of the Public Service Company, and the plaintiffs below have appealed. Pauline Jennings, the injured girl, died shortly after the rendition of the judgment and before perfection of the appeal, and the appeal is being prosecuted by her surviving sister, as her sole heir at law.

It is the contention of appellant that the settlement, as well as the St. Louis judgment, was procured through the fraud of appellee; that the settlement was procured through false representations of the claim agent made to appellant that Pauline was not seriously or permanently injured in the accident and would soon be fully restored to her normal condition and health; that the judgment confirming the settlement was procured by appellee without the knowledge or consent of appellant, and was therefore not binding upon appellant; that the conditions resulting in the death of Pauline Jennings, although caused by the accident, did not develop and were not manifest at the time of the settlement, but developed afterwards, and were not within the contemplation of the parties at the time of the settlement, and that the damages resulting therefrom are recoverable notwithstanding the settlement.

■ ■ There is no merit in the contention that appellant was misled by the claim agent into a settlement in the belief that her sister's injuries were negligible. Appellant knew more about her sister's condition and progress than any one else. She testified that she knew all the time that her sister suffered from the accident from the moment of its occurrence; that she had not improved, was still suffering, and never did recover from the condition she was in following the accident. And while it is true she testified that the claim agent told her that her sister was not seriously or permanently injured, and would soon recover from the accident, she further testified that she consulted the physician of her own selection about her sister's condition, and on the strength of her physician's statements proceeded to agree to the settlement. Her own testimony shows conclusively that she was not deceived into the settlement by the representations of the claim agent concerning the condition of her sister.

■ It is equally plain that she was not tricked into the procedure at St. Louis. It is true that she testified that she did not understand that the transaction at St. Louis was to be consummated through any court, and that she did not know that the transac-

tion was actually had in a court; that she did not recognize the stage as being set with the personnel and trappings of a court. But she did testify that the agreement of settlement included an arrangement whereby she and her party were to stop off at St. Louis (en route to her future home) and there complete the settlement by receiving the final payment of $50 and executing the final release of the company; and in the receipt and release of the $450 paid the claimants before leaving San Antonio it was expressly recited that the balance of $50 was to be paid the claimants *"in the courts of St. Louis, Missouri."* This receipt was signed by both sisters and Mitchell when they received the $450 payment in San Antonio. She pursued this plan, called on the company's named representative in St. Louis, accompanied him to a place in which a man was sitting at a desk, went through the formalities required there, received and accepted the $50, joined her sister and husband in executing and delivering the final release, in which the court proceeding was recited, indorsed on the margin of the judgment that it had been satisfied by payment, and resumed her journey to Illinois, all as planned before she left San Antonio. The transaction occurred in a justice court, admittedly having jurisdiction over the parties and subject-matter, and the judgment of which recited appellant's appointment as next friend, as well as all the other essentials of a valid judgment. Appellant concedes that the whole transaction, including the court action, was carried out exactly as she agreed upon at San Antonio, except that she did not realize it was being actually consummated in a court of justice. It ought to be presumed that she acted in good faith in accepting the money and executing the release. She does not pretend that she was not acting in good faith in the matter. This being true, it seems that she cannot now be heard to question the binding effect given the transaction through the judgment of a court.

██ It is first contended by appellant that the judgment of the foreign court is void because it was obtained by the minor through her sister, as next friend, whereas the minor had a legal guardian in Texas at the time; that, having a legal guardian, no suit by next friend, or other representative than the legal guardian, could be maintained in her behalf, nor could any judgment affecting her be rendered in such suit. This position is untenable. The suit was brought and the judgment was rendered in a Missouri court, and the validity of the proceeding is determinable by the laws of that state. And under the statutes of Missouri (section 1165, R. S.): "Suits by infants may be commenced and prosecuted, either: First, by the guardian or curator of such infant; or, second, by a next friend appointed for him in such suit." It is agreed

by the parties that the St. Louis court was "a duly and legally created and existing justice of the peace court of the state of Missouri," that that court had jurisdiction of the amount of the judgment here attacked, that "the appointment of (Anna Jennings) next friend (of Pauline Jennings) in said suit was approved by the justice of the peace," and that said "judgment is admissible in evidence in the instant case as to form and manner of proving same, subject, however, to all other objections as to substance and legal effect." It is also shown by the record that the next friend was appointed or approved by the justice of the peace in the manner provided by the Missouri statutes. It would seem to be obvious that this adjudication of the right of Anna Jennings Mitchell to maintain the Missouri suit as next friend of her minor sister is conclusive against attack in the courts of this state, and we so hold. In the analogous case of Cook v. Thornhill (13 Tex. 293, 65 Am. Dec. 63), Mr. Justice Wheeler said:

"The record of the judgment recovered in the State of Mississippi establishes the right of the plaintiff to recover, in the name and capacity in which she now sues. Her right to sue by her next friend was matter material and traversable in that suit; and as to that matter the judgment is final and conclusive. 1 Greenl. Ev. 528, 548.

"It cannot be pretended that the court in Mississippi had not jurisdiction to try and determine the question of the right of the plaintiff to sue and recover in the action brought there, by her next friend; and having jurisdiction of the parties and the subject matter, its judgment was conclusive of that question there; and is entitled to the same effect when suit is brought upon it in this State. ([McElmoyle v. Cohen] 13 Pet. 312 [10 L. Ed. 177.]) A judgment of a State court has the same credit, validity and effect in every other court in the United States which it had in the State where it was pronounced; and whatever pleas would be good to a suit thereon in such State, and none others, may be pleaded in any other court in the United States. ([Hampton v. McConnell] 3 Wheat. 234 [4 L. Ed. 378.]) If this suit upon the judgment had been brought in the State of Mississippi, it will not be pretended that the defendant could question and bring again into litigation the right of the plaintiff to sue. No more can he do so in this suit."

It seems to be the settled law of this and other states that judgments of the courts of one state may be collaterally attacked on account of fraud in the courts of a sister state in cases where the fraud went to the jurisdiction of the court rendering the objectionable judgment, or constituted a fraud upon the law of the forum, or operated to prevent the complaining party from asserting his

case. Casenote in Levin v. Gladstein, 142 N. C. 482, 55 S. E. 371, 32 L. R. A. (N. S.) 905, 115 Am. St. Rep. 747.

It is conceded, or at least the record conclusively shows, that the Missouri court was one of competent jurisdiction, and it appears from the judgment complained of that that court had jurisdiction of the subject-matter and of the parties, and that ground of attack upon the judgment fails. It is contended, however, that the claimants, although admittedly actually appearing in court and going through the forms of a friendly or agreed settlement, did not realize or suspect that they were in a courtroom or before a judge, and did not recognize the procedure as that of a court, and that therefore that procedure was in fact a fraud upon the parties plaintiff. We have already discussed this contention, and, as stated, it is undisputed that Anna Jennings Mitchell, together with her husband and her minor sister, for whom she essayed to act throughout the negotiations and settlement, were actually in the presence of the court, as such, when the judgment was rendered; that they all (including the elder sister, signing her name as "guardian") executed the release of the company, accepted the amount agreed upon, and actually signed their names upon the margin of the judgment in satisfaction thereof, the elder sister signing as "next friend." This judgment was in the usual form, and recited the appointment, and judicial approval thereof, of Anna Mitchell as the minor's next friend, as provided in the Missouri statute. It is not pretended by appellant that any person represented to her that the proceeding was not judicial, or that it would not be had, or was not being held, in a court of law. And while Pauline was yet a minor, being only 16 years old, her sister was 21, was married, and had her husband by her side throughout the whole proceeding, as well as in all the negotiations and agreements leading thereto.

We think these uncontroverted facts must be held to conclusively fix upon appellant full knowledge of the nature of the proceeding and her full responsibility thereunder. And even though she may not have fully realized that she was acting within the view and under the sanction of a court of law, and that her acts were being registered in a judgment of that court, nevertheless it is undisputed that in this final act of the settlement she was literally and willingly and wittingly carrying out to the letter her prior agreements, voluntarily entered into under the counsel and advice of physicians and attorneys of her own selection. It does not seem to matter, now, that she was acting for her minor sister in the transaction, as well as for herself, for her sister is dead, and her sister's cause of action, surviving to appellant, is now being pressed by appellant as her own, because of her sole heirship. For her to now contend that the judgment does not express her voluntary action would be to say that she was not acting in good faith when she agreed with appellee to do the very thing she did do. We think she is estopped to take this position, since she, alone, may profit by this repudiation of her own conduct.

So does appellant contend that the settlement and judgment constituted a fraud upon the law and courts of this state; that such fraud consisted in the action of the parties in disregarding the minor's guardian, the pending law suit in Bexar county, and the probate court of Bexar county, and in shifting the controversy into a court in Missouri. The point need not be decided, because, whether those acts constituted fraud, or not, they were fully and actively connived at by appellant herself. For appellant herself testified that after her guardian, through his attorneys, filed the suit in Bexar county she engaged Judge Noonan to prosecute the claim; that she did not want her guardian and his attorneys to handle the claim, but wanted Judge Noonan to do so, and she so advised Judge Noonan and appellee's claim agents, as well as her guardian and his attorneys. She testified upon this point, that: "I did tell Judge Noonan that I wanted him to handle this matter for me and that I did not want those people at Belton to handle it, and I told Fred Johnston and Mr. McGarity, who was another claim agent that, after they talked to me." It was in pursuance of this attitude that she and her sister and husband soon to be and their attorney, of their own selection, proceeded with the settlement in disregard of the guardian and his attorneys, and of their suit then pending in Bexar county, and concluded it in another state. If this constituted fraud it was as much of appellant's concoction and practice as of appellee's, and she is estopped to plead it now in order to avoid its effects.

The facts also defeat any purpose of appellant to nullify the Missouri judgment on the third and remaining possible ground, that any fraud of appellant operated to prevent appellant from asserting her cause of action in the foreign proceeding. For it is conceded that that judgment was a true expression of appellant's prior agreement and understanding with appellee.

Having these views upon the case presented, we conclude that the trial court correctly directed a verdict for appellee, and the judgment is affirmed.