Ruffin, C. J.
 

 Thomas Sutton died intestate in Bertie County, and left two daughters and a son, all infants; and John E, Wood married the elder daughter, and in 1816, was by the County Court appointed guardian of the other two children. They were entitled to valuable estates in land and slaves, besides a considerable sum of money, remaining in the hands of the administrator after the payment Of debts. and Wood received the whole. In the division of the land, the share allotted to the younger daughter, Celia Sutton, was charged with the sum of $4379 54 in favor of the shares of Mrs. Wood and the brother. In the latter part of the year 1819, the plaintiff, Mebane, then of Orange, and since of Guilford County, married the ward, Celia, while at school in Orange, and without the approbation or knowledge of her guardian, who proceeded to hire out her slaves and lease her land for the next year. These circumstances produced an unfriendly feeling between Mebane and Wood, and there was no intercourse between them until near the end of the year 1820, Mebane then went to Bertie, and he and
 
 *404
 
 Wood attempted to adjust their differences, and settle the accounts between Wood and his late ward, Mrs. Mebane; butthey were unable to agree, as Wood claimed a large sum to be due (0 him. They then, as the bill states, selected Mr. Reynolds, a respectable member of the bar, to examine Wood’s vouchers and demands, and to ascertain what the balance due was, and in whose favor; and they agreed, that this should be done in the absence of the parties, inasmuch as Mebane knew nothing respecting the estate. Some days afterwards, Reynolds informed the parties, that he had found a balance due from Mrs. Mebane to Wood, in right of his wife and of his other ward, William Sutton, of $1064 64 on the 1st of January, 1821. Upon receiving this information, Mebane executed his bond for that sum, payable to Wood as guardian of William Sutton; and also executed a release of all demands against Wood, as the late guardian of his wife. The plaintiff executed those papers without reflection, as the bill states; and, being surprised at the balance found, he immediately asked Reynolds and Wood for the accounts on which that balance arose, and was answered by Reynolds, that he could not then lay his hands on the accounts and calculations, but that he would endeavor to do so, and would deliver them to the plaintiff ; and was assured by Wood, that if Reynolds should detect any mistake made by him, or if the plaintiff could point out any, when he should see the accounts, it should be corrected. And the bill states, that, being thus put off at that time, the plaintiff was never able to get a copy of the account, nor any information how the result had been arrived at by Reynolds.
 

 Wood died in 1835, and Reynolds about the same time; and in 1836, the defendant, having administered on Wood’s estate, and been informed by the plaintiff, that he would not pay the bond, instituted an action on it and recovered judgment, and in August, 1837, the present bill was filed, praying that the bond and release should be set aside, and the settlement between the parties opened and a new account taken of Wood’s guardianship, and in the mean time for an injunction against the judgment at law. The bill states, that the plaintiff, by reason of the distance at which he and Wood re
 
 *405
 
 sided apart, did not often see Wood, and could not conveniently come to a settlement with him; but that during Wood’s life, he, the plaintiff, did several times apply personally to Wood, and oftener by mutual friends,'to cancel the bond, or, at least come to a new account; and that Wood, although he would not give up the bond and said that it was not convenient to enter at those times upon anew settlement, always promised that he would do so at a convenient time, and assured the plaintiff, that he need not be uneasy, and, at one time said, that the bond would probably never come against the plaintiff. The bill then states, that Wood made no return of the hires, rents, and interest of Mrs. Mebane’s estate for the year 1820; and charges that in that respect there was error in any account that Reynolds might have stated, and charges further that the plaintiff never received those profits in any other way, if not in the' settlement made by Reynolds.
 

 The answer states, that Mr. Reynolds was selected by the plaintiff, as respectable counsel, to make the settlement on behalf of the plaintiff, and expresses the defendant’s belief, founded on the information of Wood, that the settlement was a fair and just one, and that the balance, for which the bond was given, was truly due. The answer admits, that the plaintiff often expressed his dissatisfaction at the amount of the debt; and a wish to re-investigaie- the matter, and sometimes applied to Wood to do so. But it denies that the plaintiff could ever point out an error, or that Wood admitted any or ever agreed to open the settlement, or not to enforce the bond; though he frequently declared that, if an error could be detected, he would correct it, and also that he would not press the collection of the money from the plaintiff, until it .became necessary to call it in for his ward at his arrival at full age. The answer states that the defendant is unable to furnish the accounts stated by Reynolds, and that he does not admit or know of any error therein; and insists on the release executed by the plaintiff as a bar to any relief, and, especially, after the lapse of upwards of sixteen years since the transaction now impeached, and after the death of both Wood and Reynolds.
 

 
 *406
 
 Upon the coming in of the answer, the injunction, which -ha<^ ^eetl granted on the bill, was dissolved, and the plaintiff then held his bill over as an original, and replied to the anSVver, and took some proofs.
 

 Publication having been made, the cause was set down for hearing and transferred to this court.
 

 The proofs taken by the plaintiff are not material, and, consequently, the cause must be decided upon the case as made by the bill and answer. The object of the bill is to impeach the settled account, on which the bond and release, mentioned in the pleadings, were founded. To say nothing ' of the staleness of the application, the plaintiff’s case is radically defective in his not having stated in the bill, and established an error in the settlement. The bill charges, that there were errors; but that is a mere inference from the amount of the balance found unexpectedly to the plaintiff, and from the circumstance that the guardian did not in 1821 return the hires and rents of 1820. The plaintiff could not on his oath state, that those hires and rents were not taken into the account; because he admits, that he has no counterpart of the account, and, indeed, states that he could not get a copy, although he applied for it. Now, in bills to surcharge and falsify, or to impeach a settlement, it is the established rule, that errors must be specifically pointed out,
 
 to
 
 prevent surprise on the defendant. Here, the plaintiff is unable to do so, except by conjecture; for the reason, that not having a copy of the account and not having been present at the settlement, he does not know what was, or was not, included therein. It is the misfortune of the plaintiff not to have filed his bill, in the life of Wood, for a discovery of the items, or while Mr. Reynolds was living and could have proved them. As they alone had a personal knowledge of the facts sought, the plaintiff has deprived himself of the advantage he ’ might have had by his delay in bringing suit until their death; a delay not at all attributable to ignorance, as the plaintiff suspected the mistake at once. It is impossible for us to see an error in the settlement, under such circumstances; and without some error established, the settlement and bond, cannot be disturbed. Nothing better than conjecture is
 
 *407
 
 offered as to the only one suggested, namely, the omission to credit the plaintiff with the profits of his wife’s estate for 1820; and even that conjecture is vague and unsatisfactory. It rests on the circumstance that Wood made no return of them, as guardian. But it is very natural, that he should make no return after his guardianship had ceased, and he had settled with the ward’s husband and taken his release, and the more especially, ifin the settlement he had accounted for the demand in question. Moreover, it would require pretty clear proof to induce the belief that Mr. Reynolds could have omitted so material and obvious a credit. It is, indeed, possible; but the fact must be established affirmatively by evidence, before any thing can be done for the plaintiff.
 

 The bill must therefore be dismissed with costs.
 

 Per Curiam, Bill dismissed with costs.