## TOWN OF MORGANTON v. H. L. MILLNER AND C. T. CAIN.

### (Filed 11 May, 1921.)

**1. Actions—Indebitatus Assumpsit.**

In the absence of a special contract, or unless in contravention of some principle of public policy, whenever one man has been enriched or his estate enhanced at another's expense under circumstances that in good conscience call for an accounting between them, the common-law action of *indebitatus assumpsit* may ordinarily be maintained against the wrong-doer for the amount shown to be justly due.

**2. Same—Account Stated—Contracts—Fraud—Mistake.**

Where men who have had business dealings with each other have come to a full accounting and settlement purporting to cover transactions between them, such adjustment has the force and effect of a contract, and may not be ignored or impeached except by action in the nature of a bill in equity to surcharge or falsify the account for fraud or specified error.

**3. Same—Taxation—Municipal Corporations.**

Where a city brings action against a taxpayer and its former manager presenting the question as to whether the taxpayer has paid his taxes, or whether the manager had collected them and failed to account to the city, and there is evidence tending to show that an accounting had been had between the duly accredited agent of the city, acting in its behalf, and its manager, including the amount in suit, the principles relating to an account and settlement apply.

**4. Courts—Jurisdiction—Justices of the Peace—Appeal—Superior Courts —Equity.**

The courts of justices of the peace have no jurisdiction over the equity of correcting an account and settlement stated and had between the parties, so as to surcharge or falsify it for fraud or specified error, nor will the Superior Court acquire such jurisdiction on appeal.

CLARK, C. J., dissenting.

APPEAL by plaintiff from *Shaw, J.*, at the October Term, 1920, of BURKE.

Action heard on appeal of plaintiff from a justice court to the Superior Court.

The plaintiff complained and seeks to recover $42.75, alleged to be due plaintiff for nonpayment of $42.75 taxes due from defendant Millner and wife for year of 1916, and "which had been placed in the hands of defendant Cain as manager of the town of Morganton with authority to collect same, and which had never been accounted for or charged to him in his settlement with plaintiff as such town manager. Though plaintiff is informed and believes that said taxes were paid to said defendant Cain by his codefendant, H. L. Millner and wife, and were left out or overlooked from said settlement as items to be charged against said defendant by mutual mistake of the parties." Defendant Millner denies liability, and alleged full payment of $42.75, the amount due for taxes for 1916. Defendant C. T. Cain denies liability, and alleges full and complete accounting for the special sum, and for all other sums due the town of Morganton by virtue of his office as town manager. The facts in evidence tended to show that Millner and wife had paid the taxes to Cain, and that he had turned the same into the town treasury. There was further evidence to the effect that in spring of 1917, with a view of going out of office and turning the books and affairs over to his successor, the defendant Cain had an accounting and settlement of the taxes, etc., and other moneys coming into his hands amounting to $30,000 to $35,000; that the accounting was made by Mr. E. B. Claywell, official auditor appointed by the board of aldermen for the purpose, a balance struck, and the amount paid according to the settlement showing that the amount was something like $2, witness did not recall whether in favor of the town or defendant Cain, but whichever way it was the amount was paid, and later the settlement was approved by the board of aldermen and ordered recorded, and this was done. It further appears that in making the settlement referred to there was a mistake made in that defendant Cain was not charged with the Millner taxes. At the close of the testimony, the court being of the opinion that plaintiff could not recover in the present action in deference to such opinion, plaintiff submitted to a nonsuit, and judgment being so entered, excepted and appealed.

*Avery & Ervin for plaintiff.*
*No counsel for defendant.*

HOKE, J., after stating the case: It is recognized in this jurisdiction that in the absence of a special contract, or unless in contravention of some principle of public policy, wherever one man has been enriched or his estate enhanced at another's expense under circumstances that in good conscience call for an accounting between them, the common-law action of *indebitatus assumpsit* may ordinarily be maintained against

the wrongdoer for the amount shown to be justly due. *Sanders v. Ragan,* 172 N. C., 612, and authorities cited. There is, however, another principle equally wholesome, and as fully established with us that where men who have had business dealings with each other have come to a full accounting and settlement purporting to cover the transactions between them, such adjustment has the force and effect of a contract, and may not be ignored or impeached except by action in the nature of a bill in equity to surcharge or falsify the account for fraud or specified error. *Williamson v. Jones,* 127 N. C., 178; *Suttle v. Doggett,* 87 N. C., 203; *Costin v. Baxter,* 41 N. C., 197; *Mebane v. Mebane,* 36 N. C., 403; *Pratt et al. v. Weyman et al.,* 6 S. C. Equity, 89; 4 Pomeroy's Equity (3 ed.), sec. 1421; Bispham's Equity (9 ed.), secs. 485-486. In *Williamson v. Jones, supra,* the present *Chief Justice* speaking to the question said: "The statute is explicit, and, even in the absence of the statute, it would have been necessary, in order to impeach the account audited and settlement made by the county commissioners, to have averred fraud, or set up specially the errors assigned." In *Suttle v. Doggett, supra,* it is held "that an account stated and settlement made between the parties (here a county and its tax collector) have the force of a contract, and operate as a bar to a subsequent accounting, except upon a specific allegation of fraud or mistake." In *Costin v. Baxter, supra,* the principle and one of the controlling reasons for it is stated by *Pearson, J.,* as follows: "When an account settled is relied on, by way of plea or answer to a bill for an account, it is conclusive unless the plaintiff can allege and prove some fraud or mistake; for, otherwise, he has already had that which he asks by his bill, having made a settlement, and thereby perhaps induced the other party to destroy or surrender his vouchers. It would be most mischievous to allow the settled account to be set aside, unless from urgent reasons." It could not at all be maintained that this is not an account and settlement coming under the effect and influence of the principle. The facts in evidence show that it was a full accounting by defendant Cain, the former town manager, with the official auditor of the town designated for the express purpose by the board of aldermen and put upon the public book of accounts and payment made pursuant to its findings. The witnesses refer to it as the settlement had with the town manager, and plaintiff's principal witness, and all of the witnesses, refer to it as the settlement had with the town manager. This being true, such account can only be impeached, as stated, for fraud or mistake duly specified and proven, and to be enforced by civil action in the nature of an original bill in equity, and the justice of the peace where the suit originated being a common-law court, having no jurisdiction of such causes, the action, under our decisions, has been properly dismissed.

MORGANTON v. MILLNER.

*Cheese Co. v. Pipkin,* 155 N. C., 394; *Wilson v. Ins. Co.,* 155 N. C., 173; *Dougherty v. Sprinkle,* 88 N. C., 300.

We find no error to appellant's prejudice, and the judgment of nonsuit entered against him is approved.

Affirmed.

CLARK, C. J., dissenting: The plaintiff is already in the Superior Court, and there are three reasons, each good and sufficient, why the plaintiff should not be dismissed out of that court and compelled to come back into the same court at heavy expense to litigate identically the same question.

1. This action is to recover $42.75, which was paid by H. L. Millner to the defendant Cain, the tax collector of the town of Morganton, but which it is alleged the collector did not pay over to the town of Morganton. It is not denied that Millner paid this tax to the said Cain, and the sole issue is whether Cain has paid it over to the town of Morganton.

The plaintiff put in evidence the tax list for Morganton for the year 1916, showing that Millner owed $41.90; that Cain, as collector, had charge of the book for the collection of taxes, and it appears therefrom that his total taxes, including cost, was $42.75.

The auditor for the town testified that when he settled with Cain for the taxes of 1916 this matter of Millner's taxes was left out of the settlement, Cain being given credit for those receipts because those taxes had not been collected. "He was charged with them originally," says the auditor, "but he was credited with the receipts still in the book, and the difference was the cash that he ought to have had in hand. He ought to have had $40 and some odd dollars more than he had, but he never accounted for those taxes in his settlement with us. I remember the day he made the settlement. There was something said about those receipts the day I made that audit, but just what it was I do not know; the subject was brought up. The receipts were still there (in the stub book), and I could not do anything in the world but credit or charge Mr. Cain with it, because he could not show they were paid. The way I was doing it amounted to a credit. I charged him with everything that was on the book, and credited him with the receipts that were still in the book. I charged him up with the amount he was chargeable with, and then I gave him credit for such receipts for taxes as it appears he had not collected, and the balance I charged up against him in favor of the town." From this it would appear that this was not a full settlement by the defendant with the town, but simply crediting the defendant with the money he had paid into the town treasury, and crediting him also with the receipts still in the book which he had not torn out and delivered to parties on payment of taxes. This action, therefore, is not

to surcharge and falsify an account, but the plaintiff was proving that this sum had not at that time been paid by Millner as the receipt for the taxes was still in the stub book, and hence that item was not erroneously omitted, but was not taken into the settlement at all. Cain did not produce any receipt in full from the town showing that he had paid up, and the auditor's evidence showed that by the settlement then made Cain received credit for the $42.75 as uncollected. This action, therefore, is a plain action of debt to recover from Cain a certain amount which at the settlement he did not claim he paid over, but was credited with it as unpaid, the receipt for the same being still in the stub book.

Whether this was correct or not was a matter which the jury should have settled, and not the judge. The action was properly brought before the justice of the peace, and by appeal it came to the Superior Court. If there was any equitable element it is solely in there being an omission by mistake to include the Millner taxes in the settlement, but the plaintiff's testimony denies this, and Cain's defense is that he actually paid over to the town the $42.75, which he admits he collected. If either is right, there was no omission by mistake, and no possible equity involved, and the jury should have been allowed to settle it.

The plaintiff's testimony is that there was no mistake, for that the Millner taxes were purposely omitted because the receipt therefor was still in the tax-collector's book, and he was charged only with the cash he had collected at that time.

Whichever contention is right there was no mistake, it is simply a question of fact—Cain saying he had paid and the plaintiff saying he had not—a pure issue of fact, of payment or no payment, which a jury must settle, which it was then empaneled to settle and should have settled without all this needless countermarching. The plaintiff was seeking only to recover $42.75 (which the opinion says appears now not to have been included in the amount paid to town), and was doing no wrong, but only its duty in seeking to get the $42.75 paid up. Yet it is penalized with the costs before the justice, with the costs in the Superior Court, and with the costs of this Court! To what end and for what possible benefit to any one? There is certainly no equity in this.

The defendant produced no receipt in full from the town, and if he had a receipt it would be only *prima facie,* and even in the old days when technicalities were the delight of judges could be disproved in a court of law. *Keaton v. Jones,* 119 N. C., 43.

2. As a second ground why the action should not have been dismissed, this proceeding was properly begun before the justice of the peace. It is true a suit to surcharge and falsify an account was formerly called an equitable proceeding, but there is nothing in the Constitution of North Carolina which justifies the contention that a justice of the peace

has not equitable jurisdiction. There have been some few decisions to that effect, but an examination of the Constitution as it is written will show that such holding was but the survival of former ideas in regard to the distinction between law and equity, which was utterly abolished by the Constitution, which should be of more authority than any opinion which any judge may have inadvertently expressed. The language of the Constitution will speak for itself.

The Constitution of North Carolina, Art. IV. "Sec. 1. *Abolishes distinction between actions at law and suits in equity, and feigned issues.* The distinction between actions at law and suits in equity, and the forms of all such actions and suits shall be abolished; and there shall be in this State but one form of action for the enforcement or protection of private rights or the redress of private wrongs which shall be denominated a civil action." It will appear from this that the distinction which formerly was deemed most essential between the actions at law and suits in equity and the forms of all such actions and suits were absolutely abolished in this State. There is nothing that indicates that that abolition applied only to the Superior Courts. The distinction was absolutely abolished, and could no longer have any existence in any court in this State by whatever name it might be called—whether it was a justice of the peace, a city court, a county court, a Superior Court, or the Supreme Court. Any decisions to the contrary are in contradiction of the very language of the Constitution, which could not be more explicitly or plainly expressed than it is written. Therefore, even if this could be termed an equitable proceeding to surcharge and falsify an account, still the object of the action by the town was to recover the sum of $42.75 taxes for the year 1916 due the plaintiff, which the taxpayer alleged he had paid to the tax collector, Cain, and which the latter asserted that he had paid over to the town, but which the evidence for the plaintiff showed was not embraced in any settlement, and was expressly excluded and omitted because the receipts were still in the collector's book, and he was given credit for them. The question was not to surcharge or change any settlement actually made, but whether the settlement as made embraced this sum, which was not a matter of equity but an issue of fact for the jury, which they should have settled.

But even if it were, as claimed, an action to surcharge the account, there is no authority in the Constitution which will justify holding that a justice of the peace would not have jurisdiction. Constitution, Art. IV, sec. 27, provides: *"Jurisdiction of justices of the peace.* The several justices of the peace shall have jurisdiction, under such regulations as the General Assembly shall prescribe, of civil actions founded on contract wherein the sum demanded shall not exceed $200, and wherein the title of real estate shall not be in controversy." This was

a civil action founded on contract, and whether the question involved is one of equity or of law, as that distinction was formerly asserted, is immaterial, for that distinction was absolutely *abolished,* and therefore cannot exist in any court, and is not recognized in any line or word of the Constitution, nor in the provision which prescribes the jurisdiction of the justice of the peace or of any other court.

It is true that a justice of the peace cannot issue an injunction, nor can the Supreme Court (except a temporary one in a matter pending before it), nor can any other court except the Superior Court alone, but that is not because it is equitable, but because the statute does not confer the right to issue the ancillary remedies of injunction or mandamus on any other court. Just as the writ of prohibition can be issued only by the Supreme Court. These are not forms of action, but simply remedies, the right to exercise which is conferred on certain courts by legislation.

Besides what is already stated, this Court has recognized that the justice of the peace has jurisdiction of equitable matters. In *Levin v. Gladstein,* 142 N. C., 495, this Court held that the justice of the peace could take cognizance of an equitable defense, *Connor, J.,* saying: "It would be incompatible with our conception of remedial justice under the code system to require the defendant to submit to a judgment and be compelled to resort to another court to enjoin its enforcement. This is one of the inconveniences of the old system which was abolished by the Constitution and the adoption of our Code of Practice." If the justice has jurisdiction of an equitable defense, he must have jurisdiction of an equitable claim for the same reason.

3. There is a third reason why, being already in the Superior Court, this litigation over the sum of $42.75 should not have been taken from the jury and judge who were competent to decide it, and the town should not have been sent out of the Superior Court at heavy expense to begin exactly the same action upon the same subject in the very same Superior Court. The case had gotten into the Superior Court by appeal and even upon the contention of the defendant that court had jurisdiction of this subject-matter, and having jurisdiction, the plaintiff should not be sent out of court to come back again into the same court. There have been conflicting decisions of the Court on this question. These conflicting decisions are cited and arrayed in *Holmes v. Bullock,* 178 N. C., 379, 380, and need not be again repeated. The plaintiff who has appealed to the Superior Court admits thereby that that court is seized of jurisdiction. The defendant, who is seeking to evade the settlement of the issue by a plea that the justice did not have jurisdiction, is thereby affirming that the Superior Court has jurisdiction, and as, therefore, both parties admit jurisdiction there was no advantage to the administration of justice in the child's play of sending them out of the

court which both sides admit has jurisdiction to come back again into the same court upon the ground that the Superior Court has jurisdiction and inflicting the penalty of heavy costs in all three courts upon the plaintiff. In close analogy to this is the incident when Texas, then a new State, was a city of refuge for parties charged with crime. One of these citizens committed a homicide in Texas, and when advised by his friends to leave, exclaimed in dismay, "Where can I go? Am I not already in Texas?" Why dismiss the defendant from the Superior Court to come back into that court when he is already in the Superior Court.

To sum up:

1. The issue is simply payment or no payment, and even under the former technical system (happily and totally abolished now more than 50 years ago) it would have been an action at law begun before a justice of the peace to recover $42.75.

2. Even if an equitable proceeding to recover that sum, the justice had jurisdiction thereof under the Constitution, Art. IV, secs. 1 and 27.

3. Even if the justice of the peace did not have jurisdiction, the case having gotten into the Superior Court, that court should retain jurisdiction and determine the controversy. This principle has statutory recognition in C. S., 637, enacted to cure the decision to the contrary in *Brittain v. Mull,* 91 N. C., 498. See *Roseman v. Roseman,* 127 N. C., 497.

Under the old system in which technicality was more important than merits a plaintiff was dismissed if his lawyer guessed differently from the judge as to which of the many forms of action he should choose, or sued in equity when the judge thought it should have been at law or *vice versa.* If he sued in the wrong county, or if he had too many or too few parties, or pleaded more than the judge thought enough or too little, the case was dismissed. Now, the action is simply removed to the proper county and amendments are freely allowed as to pleadings and parties. These changes were all brought about by the demand that justice should be administered, and not injustice under the forms of law.

There is but one point in this case, and that is an issue of fact which can be settled only by a jury. It was before the jury, and they should have been allowed to settle it. The plaintiff was seeking to collect an item which it claimed that the tax collector had not paid in, and the defendant denied it. *The taxpayers of Morganton ought not to be required to pay the costs in three courts to get back before a jury in the same courthouse, upon the same evidence to decide the same question, which might and could have been settled in a few moments.*