S. A. L. NORWOOD AND OTHERS V. S. S. COBB, ADM'R.

Where suit is brought upon the judgment of another State, rendered in a suit *in personam*, the defendant may prove that he was not served with process in such suit, although there appear in the record proper process regularly returned "executed;" and if such proof be made, the judgment cannot be enforced in this State.

Appeal from Gonzales.

*Mills*, for appellants.

*A. S. Cunningham*, for appellee.

LIPSCOMB, J. This suit was brought on a decree of the Court of Chancery of the State of Mississippi against George Norwood. At the institution of this suit, upon the decree, George Norwood was dead, and an administration on his estate had been taken. This suit was against his administratrix, one of the appellants in this Court, and against the other appellants who held a portion of the slaves claimed to have been the property of the deceased, under conveyances or bills of sale alleged to have been made with a fraudulent intent, to defeat the payment and satisfaction of the decree sued upon. The deeds appeared and were alleged to have been made a few days before the death of George Norwood, and the administratrix did not inventory the property as appertaining to the estate of her intestate, and she was a beneficiary under one of the deeds. The petition sought to set aside these voluntary deeds and to subject the property so conveyed to the payment of amount decreed against the intestate by the decree of the Court of Chancery of the State of Mississippi. There was no

controversy about the authenticity of the proceedings and the decree. There was no evidence of fraud, unless it was in the return of the Sheriff to the subpœna executed, which the defendants alleged had never been served, and consequently the defendant in that suit in Mississippi had no notice of its pendency. Subpœna, returned executed, had issued against George Norwood, and two others, Davis and Hall. There was a discontinuance as to them, and George Norwood not having appeared, a decree *pro confesso* was taken against him, and auditors appointed to take an account and report; and on the coming in of their report, the decree on which this suit is brought was entered up by the Court. The doctrine is believed to be well settled, that if the party against whom the judgment or decree was rendered, had no notice of the pendency of the suit, a judgment could not be rendered against him, and that if rendered, it could not avail against him, for want of jurisdiction. If he had been served with process, the judgment however erroneous could not be impeached, so long as it was a subsisting judgment. This is so well established to be sound doctrine, that it could not be questioned.

The suit in Mississippi was to recover two slaves or the value thereof. The slaves do not appear to have been attached and the decree is for the slaves or in default thereof, the value put upon them by the auditor. The suit in this State was for the money. Had the slaves been within the jurisdiction of the Court of Chancery of Mississippi, and a decree settling the right of property to be in the plaintiff, that decree would have operated *in rem*, and would have concluded the rights of the defendant; but it was not so rendered, and this suit does not treat it as a proceeding *in rem*, as it is not brought to recover them. Professor Greenleaf, commenting on the admissibility and effect of the judgments of one State in the tribunals of another, under the Constitution and Statutes of the United States, says, "By these provisions such judgments, authenti-
" cated as the Statutes provide, are put upon the same footing

" as domestic judgments. But this, observes Judge Story, does
" not prevent an inquiry into the jurisdiction of the Court in
" which the original judgment was rendered to pronounce, nor
" an inquiry into the right of the State to exercise authority
" over the parties, or the subject matter, nor an enquiry whether
" the judgment is founded in and impeachable for a manifest
" fraud." (1 Greenl. Sec. 548.) Mr. Justice Story, in the pre-
ceding part of the same Section from which the above extract
is made by Professor Greenleaf, (Sec. 609, Conflict of Laws,)
says : " They are therefore put upon the same footing with do- .
" mestic judgments." He says the same in his Commentaries
on the Constitution. (Sec. 1313.) This qualification is how-
ever given by the learned Judge, that the Constitution did
" not make the judgments of other States domestic judgments
" to all intents and purposes ; but only gave a general validity,
" faith and credit to them as evidence," (Sec. above cited.)
The same learned author in the same book, (Sec. 609 a,) says :
" In the sister States of America the effect of a Judgment in
" one State when relied upon as a cause of action in another,
" has been frequently discussed of late, and the tendency of
" modern decisions is to restrict the force of such judgments
" in the Courts of another State," and he cites the cases of
Aradt v. Aradt, (15 Ohio R. 33,) and the case of McVicker
v. Beedy, (31 Maine R. 316.) The former was a suit brought
in Ohio on a judgment rendered in Pennsylvania. The only
service in the original suit was an attachment levied on the
defendant's real estate situated in the latter State. The de-
fendant had no personal notice of the suit, and never appeared
to the action, either by himself or attorney, neither had he
ever been within the State of Pennsylvania. It was deter-
mined that such a judgment was not even *prima facie* evidence
of debt in Ohio.

In the case of McVicker v. Beedy, the original suit was in
the Supreme Court of Illinois, upon a contract made in that
State, and the defendant at that time residing there. Previous

to the commencement of the suit, he removed to Maine, leaving property in the hands of a person, a resident of Illinois, which was attached by the trustee process, and notice of the suit was published in the newspapers, according to the statutes of Illinois. The defendant, however, had no actual notice of the suit and did not appear to the process. Judgment being obtained upon his default, and the property attached being insufficient to satisfy the same, an action of debt was brought in Maine to recover the balance. The objection of a want of jurisdiction in the Courts of Illinois was held to be well taken.

In the case of D'Arcey v. Ketchum et al., (11 Howard's U. S. R. 165,) it was decided that a judgment under the statute of New York, against a member of a firm residing in Louisiana, who had not been served with process, and who did not appear, nor make a defence, could not sustain an action brought upon it in Louisiana, although the judgment obtained in New York under the statute that made service upon one joint debtor good against the others, was a valid judgment where it was rendered ; and this was on the ground of a want of notice.

The cases cited were all adjudicated with a reference to the Constitution of the United States and the Act of Congress of 1790, giving faith and effect to the judgments of one State in another, and show that it is not true that the judgment when sued on, of one State in another, must have the same legal effect that it had in the State where it was rendered. The reference to Judge Story and Professor Greenleaf were cited with the same view. And it is evident, as Judge Story remarks, that the tendency of the decisions is to restrict the force and effect of judgments of one State when sued upon in another, and to regard the Constitution as only guaranteeing to such judgments full faith as evidence, without impugning the old Common Law doctrine that was regarded in force, allowing the Courts where suit was brought on such judgments to impeach them for want of jurisdiction, and that in personal actions a want of notice amounted to a want of jurisdiction,

or to impeach the judgment on the ground of fraud. This is placing them on the ground of domestic judgments. The case cited from 11th Howard is well discussed in the opinion of the Court, and results in the conclusion that they are to be regarded as only evidence that such judgment had been rendered, but that it is liable to be impeached upon the grounds we have noticed above. It is the settled doctrine that no man can be concluded in his rights by a judgment in a suit of which he made no defence and had no notice of the suit. And it is equally well settled that fraud will vitiate the most solemn judgments of a Court of record.

It seems from the investigation we have made, that a judgment of another State, when sued on in this, can be impeached for fraud ; that if there was no personal service the judgment is void for want of jurisdiction ; and that such judgment, so far as regards its effect, is not put upon a better footing than a domestic judgment, and its validity subject to be tried as one of our own judgments, and does not rest, for its support, upon the law of the forum where it was rendered.

In the case before us, the defendants set up the defence that the judgment was fraudulently obtained, and that the defendant had no notice of the suit in which the decree was rendered, and offered to introduce evidence to sustain their defence set up in their answer, but were not permitted to do so. We have shown that if the want of notice appeared from the record, the the judgment would be regarded as a nullity, on which an action could not be sustained ; because that without notice the Court rendering the judgment had no jurisdiction. And the question is, can the fact that there was no notice, in the face of the record sued on, be shown by resorting to evidence outside of it ? We believe that it can be done without violating any established rule laid down by the Judicial decisions. The rule is believed to be universal, not only in cases arising upon judgments of a sister State, but by the Common Law, and acknowledged also to prevail in most civilized governments, that

a want of jurisdiction in the Court rendering the judgment invalidates the judgment; and it would be vain and useless to say to the party interested: You may impeach the judgment and show that the Court awarding it had no jurisdiction,—and deny to him the means of showing such want of jurisdiction. And again, it is universally admitted, that fraud in obtaining the judgment will vitiate it. Now if it be true that the Sheriff returned the subpœna sued out to the defendant in the suit in the Court of Chancery of Mississippi, executed upon the defendant, when in truth and fact it had not been executed, it was not only a fraud on the party, but it was also a fraud upon the Court. This fraud cannot be established unless proof is received of the fact of the false return of the Sheriff. Formerly there was much discussion in the Courts and a great diversity of opinion on the question of going behind the judgment and reviewing it on the merits; but the more recent decisions establish this position, that if the judgment is successfully assailed upon the grounds of want of jurisdiction, or fraud in obtaining it, it cannot be made the foundation of an action, because if not assailable upon the grounds of want of jurisdiction, or fraud, it is conclusive of the subject matter adjudicated, and if it is subject to either of the vices just named, it is absolutely void.

But, to return to the correctness of receiving evidence to falsify the record, we have seen that in the case of D'Arcey v. Ketchum et al., cited from 11th Howard, it was admitted that the judgment of the Court of New York could not, in that State, have been impeached on the ground of a want of jurisdiction; yet, when sued on in Louisiana, it was successfully impeached upon that ground. If a suit was brought on one of our own judgments, it cannot be questioned, but it would be competent for the defendant to go behind the judgment, and show a want of jurisdiction in the Court that rendered the judgment, or to show that it was obtained by fraud. In effect, we so ruled in Gross v. McClaran, 8 Texas, 341, and in Jones

v. Stuart, 9 Texas, 469. And it is believed often to be done in the States where the Courts of Chancery and law have separate jurisdiction, by an application to the Court of Chancery to grant a rehearing of the facts, after a judgment at law had been rendered. We believe, from the consideration we have given this case, that the Court below erred in rejecting evidence to show that there had been no service of process on the defendant in the State of Mississippi; and for this error the judgment must be reversed and the cause remanded.

There are several irregularities presented in the record from Mississippi, which though not amounting to a nullity of the judgment, yet they cannot fail to cast a suspicion upon it. There had been an attachment issued and an injunction, neither of which were returned or notice of them taken after issuance, although they had issued before the issue of the subpœna, which alone was returned *executed*. There is a report of an auditor, and the record does not show the reference, but in the decree the Chancellor assumes the fact that it had been referred.

Reversed and remanded.