### JONES v. WOODWARD.

No. 4716. Opinion Filed June 29, 1915.

Rehearing Denied September 7, 1915.

(151 Pac. 586.)

1. **EXECUTORS AND ADMINISTRATORS—Claims—Presentation.** A cause of action on account of the alleged fraud of an intestate is not one arising out of contract, and claim therefor need not be presented to the administrator before suit may be maintained thereon.

2. **NOTICE—Actual Notice—Acceptance of Deed—Contents.** By reading and accepting a quitclaim deed, in statutory form, the grantee acquired express information of the fact that the words employed therein were the very ones which the statute provides shall, when used in a conveyance, constitute it a quitclaim and distinguish it in quality and effect from a warranty deed; and such knowledge was "actual notice" of its character.

3. **LIMITATION OF ACTIONS—Fraud—Discovery.** If the execution and delivery of a quitclaim instead of a warranty deed, under the circumstances in this case, constituted actionable fraud, **held** that, as to the cause of action arising therefrom, the statute of limitations was set in motion when the deed was delivered to, and read and accepted by, the grantee.

(Syllabus by Bleakmore, C.)

*Error from County Court, Oklahoma County;*
*John W. Hayson, Judge.*

Action by Hattie Woodward against Nettie E. Jones, as administratrix of the estate of C. G. Jones, deceased. Judgment for plaintiff, and defendant brings error. Reversed.

*Wilson & Tomerlin* and *E. E. Buckholts,* for plaintiff in error.

*Geo. F. Zimmerman* and *Carlisle & Edwards,* for defendant in error.

Opinion by BLEAKMORE, C. This case presents error from the county court of Oklahoma county, wherein the defendant in error was plaintiff, and the plaintiff in error was defendant. The parties will be hereafter referred to as they appeared in that court.

On May 4, 1911, plaintiff presented to the defendant, as administratrix of the estate of C. G. Jones, deceased, properly verified, the following claim:

"ESTATE OF C. G. JONES in ACCOUNT WITH HATTIE
WOODWARD.

1902.                                                           Dr.
October 30.  To cash received by C. G. Jones from Hattie
             Woodward, payable on demand, with interest at
             the rate of 6% ............................... $225.00
             Interest on same............................... 123.25
                                                            ─────────
                     Total.................................. $348.25

"HATTIE WOODWARD, *Claimant."*

The same was rejected, and on June 26, 1911, this action was commenced. In the petition it is alleged, in substance, that the intestate was the confidential advisor of the plaintiff, and that while so acting he falsely and fraudulently represented to her that he was the owner

of certain lots to be sold at auction in the town of Cache, the most desirable of which he would select and point out to her, and, if she purchased same, would execute to her a warranty deed therefor; that, relying on said false representations and believing them to be true, on the 28th day of October, 1902, plaintiff purchased three of said lots for the sum of $225; that she was ignorant of the forms of conveyances; that on the 30th day of October, 1911, the intestate fraudulently delivered to her a quitclaim deed, instead of a warranty deed; that she accepted the same, believing it to be a warranty deed, and did not learn that it was a quitclaim deed until about October, 1909; but as soon as she discovered the fraud, she tendered to the intestate a quitclaim deed to said lots and demanded the return of the purchase price. The claim above set forth is attached as an exhibit to, and made a part of, the petition, and its presentation to and rejection by the administratrix is averred. The defendant pleads the statute of limitations.

With reference to the deed, the plaintiff testified:

"Q. Did you know at that time about what kind of a deed this was? A. I don't know yet. Q. When, Mrs. Woodward, did you first learn that this was a quitclaim deed? A. I learned it in October, 1902. Q. How did you learn it? A. I learned it in this way. I wanted to trade this land for some property here. * * * I talked with Mr. McKeever, he was going to trade, and then I learned it through Mr. Zimmerman; the Sunday following Mr. Zimmerman told me. * * * Q. Mrs. Woodward, how old were you when you got that deed? A. How old was I? Well, I can count back; well, I am 51 years old now. Q. That was 10 years ago? A. Yes, sir. Q. How many times did you see this deed from 1902 to 1909. A. I do not know. Q. Did you ever read it? A. Well, read it; yes, I read it. I was proud to think that

I had worked and got it, and then I gave it to Mr. Jones to take care of for me. Q. And you read it to your sister once? A. No, sir; I did not. Q. Did she ever read it to you? A. Why, certainly not. Q. Did you read that portion of the deed which is as follows: 'C. G. Jones, a single man, party of the first part, hereby quitclaim, grant, bargain, sell, and convey?' A. I did. Q. Did you see any claim of warranty in there? A. I thought it was perfect; thought this was just as good · as any. Q. Well, you thought it was a perfect quitclaim deed? A. I thought it was a perfect deed to my lots. I did not think of getting any other kind."

At the close of the evidence the defendant demurred thereto, and also moved the court to instruct the jury to return a verdict in her favor, both which demurrer and motion were overruled. The action of the court in this respect is assigned as error; and defendant urges: (1) That the cause of action alleged in the petition is entirely separate and distinct from that set out in the claim presented to the administratrix; and (2) that the cause of action pleaded, as well as the one set up in the claim, is barred by the statute of limitations.

The statute of this state requires that a claim arising upon a contract must be presented to the executor or administrator; and the rule seems to be that:

"In an action upon a rejected claim against an estate, the claimant can recover only upon the cause of action set forth in the claim." *(In re Dutards' Estate,* 147 Cal. 253, 81 Pac. 519; *Enscoe v. Fletcher,* 1 Cal. App. 659, 82 Pac. 1075; *McGrath v. Carroll,* 110 Cal. 79, 42 Pac. 466.)

The claim presented to the administratrix herein is apparently one arising upon contract, such as was required to be presented to her before action could be maintained thereon. However, it shows upon its face to be

barred by the statute of limitations, and therefore could not have been properly allowed by her or the county judge. Section 6345, Rev. Laws 1910. The cause of action sued on is not the same cause of action set forth in the claim presented to the administratrix. Yet the fact that such claim was attached to and made a part of the petition in no way changes or affects the nature of the cause of action pleaded; and if the same is not barred by the statute the judgment must stand.

The cause of action set forth in the petition is one for fraud, which by virtue of the statute (Rev. Laws 1910, sec. 5279), survives, and need not have been presented to the administratrix before suit could be mantained thereon. But it is "an action for injury to the rights of another, not arising on contract," which could only be brought within two years after the discovery of the fraud. Rev. Laws 1910, sec. 4657, subd. 3.

The only allegation in the petition under which the plaintiff attempts to bring herself within the provisions of the statute of limitations is:

"That she did not learn that said deed was not a deed of general warranty, but a quitclaim deed, until the —— day of October, 1909."

It is not alleged nor shown by the evidence when she discovered that Jones did not have title to the lots described in the deed. Section 1161, Rev. Laws 1910, provides what estate is conveyed by quitclaim deed; and section 1185 prescribes the words to be used in a conveyance to constitute it a quitclaim deed. In October, 1902, plaintiff, as a conveyance to her of the lots she had purchased, received a quitclaim deed, read and accepted the same, and had it recorded. It is not claimed that she was a person illiterate, or lacking in intelligence. "Actual

notice consists in express information of a fact." Rev.. Laws 1910, sec. 2924. In *Strahorn-Hutton-Evans Com. Co. v. Florer*, 7 Okla. 499, 54 Pac. 710, it is said: "It is a well-settled principle of law that notice is the equivalent of knowledge. * * *"

When plaintiff read the conveyance, nearly nine years before the bringing of this suit, she acquired express information of the fact that the words employed therein were the very ones which the statute provides shall, when used in a conveyance, constitute it a quitclaim, and distinguish it in quality and effect from a warranty deed. By such knowledge she then had actual notice of the character of the instrument delivered to her.

If the execution and delivery to her, under the circumstances of this case, of a quitclaim instead of a warranty deed, was actionable fraud, she then had the same opportunity and means of discovering it that she had at any later time. The statute of limitations was set in motion when the deed was delivered to and read and accepted by her. Plaintiff herein having notice of the contents of the deed more than two years before the bringing of this suit, her cause of action as pleaded was barred; and the court erred in overruling the demurrer of defendant to the evidence and the motion to direct a verdict in her favor.

It follows that the judgment of the trial court should be reversed.

By the Court: It is so ordered.