## HARE v. REILY.   (No. 9178.)*

(Court of Civil Appeals of Texas.   Dallas.
Jan. 10, 1925.   Rehearing Denied Feb.
14, 1925.)

**1. Judgment ⬦⟹818(1) — Of district court of other state against executor held subject to attack for noncompliance with statutes relating to jurisdiction.**

Judgment of district court of Oklahoma against executor *held* subject to attack in Texas, on ground that claim had not been presented to and rejected by executor, under Comp. St. 1921, Okl. §§ 6339, 6342–6346, 6350, notwithstanding full faith and credit clause of Const. U. S. art. 4, § 1, since such objection goes to jurisdiction of court to render judgment.

**2. Evidence ⬦⟹82—Compliance with requisites to rendition of judgment by court of general jurisdiction presumed.**

Compliance with requisites to rendition of judgment by court of general jurisdiction will generally be presumed.

**3. Judgment ⬦⟹942—Jurisdiction of Oklahoma district court in probate matters must affirmatively appear.**

Jurisdiction of Oklahoma district court in probate matters is appellate, and must affirmatively appear in action on its judgment.

**4. Judgment ⬦⟹820—Foreign judgment may be impeached for fraud.**

Under full faith and credit clause of Const. U. S. art. 4, § 1, and Act of Congress (U. S. Comp. St. § 1519), a judgment of one state sued on in another state may be impeached for fraud perpetrated in its procurement, if it might be so impeached in the state in which rendered, as is the case in Oklahoma.

**5. Evidence ⬦⟹35—Court takes judicial knowledge of principles of equity prevailing the country over.**

The Court of Civil Appeals will take judicial knowledge of the broad principles of equity prevailing the country over.

**6. Judgment ⬦⟹939—Answer held to plead fraud in procurement of foreign judgment.**

In attorney's action against administrator for attorney's fee, in which attorney relied on foreign judgment for attorney against executor in other state, allegations in answer as to fraud by which such judgment was procured *held* sufficient.

**7. Judgment ⬦⟹822(1)—Foreign judgment against executor held not conclusive in action in Texas against Texas administrator.**

Foreign judgment against executor in other state for attorney's fee *held* not conclusive in attorney's action in Texas against administrator of the estate appointed in Texas.

Appeal from District Court, Grayson County; F. E. Wilcox, Judge.

Suit by F. H. Reily against Silas Hare, administrator.   Judgment for plaintiff, and defendant appeals.   Reversed and remanded.

J. H. Wood and O. D. McReynolds, both of Sherman, for appellant.

J. R. Wood and Head, Dillard, Smith, Maxey & Head, all of Sherman, for appellee.

LOONEY, J.   F. H. Reily, an attorney of Pottawatomie county, Okl., brought this suit against Silas Hare as administrator of the estate of Samuel W. Bailey, to recover an amount alleged to be due him as attorney's fee for services rendered B. F. Hamilton, executor of the same estate in Oklahoma. Judgment was rendered for plaintiff for the sum of $6,000 and costs, from which appellant has properly perfected appeal and assigned errors.   The pleadings are voluminous but the case may be narrowed to the following statement:

On September 24, 1912, Samuel W. Bailey, of Pottawatomie county, Okl., died, leaving a will, by the terms of which his entire estate was bequeathed to one Sherman Spencer, and B. F. Hamilton, of the same county and state, was named executor.   The estate consisted of a small amount of property in Oklahoma, and about $55,000 in cash on deposit in a national bank of Denison, Grayson county, Tex.   The will was admitted to probate after considerable litigation, and Hamilton was recognized and qualified as executor, and took charge of the property belonging to the estate situated in Oklahoma.   The appellant, Silas Hare, was appointed permanent administrator of the estate in Texas, qualified, and took charge of the property belonging to the estate situated in Texas.

Plaintiff claimed that, under contract with Hamilton, executor, he rendered legal services in having the will probated and Hamilton recognized as executor.   In his original petition he declared on a claim for $4,025, which he alleged had been presented to and approved by Hamilton, executor, and allowed as a claim against the Bailey estate by the county judge of Pottawatomie county, Okl., and also that same had been presented to appellant as administrator, but was disallowed by him.   In his first amended petition appellee abandoned the verified claim described above, and sought to recover $7,000 on a quantum meruit, the alleged value of his services.

In answer to appellee's petition, appellant urged, as defenses, general denial and specially that if appellee rendered any services as alleged by him, they were not rendered for or on behalf of the Bailey estate, but were rendered at the instance and for the benefit of Sherman Spencer, the sole legatee, and on his individual responsibility; that appellee's claim was barred by the statute of limitation of two and four years; and, further, that appellee had made an agreement with Spencer, the sole legatee, to accept $10,000 in full for whatever services he had ren-

dered or might in the future render, in regard to the affairs of said estate, of which amount $1,000 was paid, and, as a means of collecting $9,000, the remainder, appellee accepted from Spencer an assignment of an interest in the estate, and waived all claim for compensation against either Hamilton, the executor, or appellant, the administrator, and that by virtue of, and as authorized by the assignment executed by Spencer, appellant had paid appellee in full the amount due him; that appellee was estopped to urge the claim against appellant as administrator because, prior to the time it was presented to him for approval, his final report as administrator had been made to and approved by the probate court of Grayson county; that when the final account was presented appellee was present in court representing his client, Spencer, and urged the court to approve the same and enter an order for distribution.

This was the status of the case on January 20, 1923. On that day appellee filed a suit in the district court of Pottawatomie county, Okl., against Hamilton, executor, to recover the sum of $6,000, which he claimed was the balance due him for services rendered Hamilton, executor, in regard to the affairs of said estate. On the day the suit was filed Hamilton signed waiver of service, waived time for making up issues, and agreed that the cause could be heard and determined by the court at any time. Hamilton made no defense to this suit. On the same day the suit was filed it was heard by the court, and judgment rendered in favor of appellee against Hamilton for $6,000 and costs. Appellant was not cited to appear and answer in the cause; had no notice of the pendency of the suit, nor of any of the proceedings until the judgment was subsequently presented to him for allowance as a claim against the Bailey estate.

. After obtaining judgment against Hamilton, appellee filed his second amended original petition in which he set up the rendition of the judgment, and based his right to recover against appellant thereon, and, in the alternative, sought to recover on a quantum meruit as alleged in his first amended original petition hereinbefore mentioned.

Appellant, in answer to appellee's second amended petition, filed his third amended answer, and urged therein the special defenses hereinbefore stated, and, in addition, pleaded, both by special exceptions and special defenses, that the judgment sued on was void, for the reason that under the statutes of Oklahoma, which were specially pleaded by appellant, the district court was without power or jurisdiction to render the judgment; that the judgment was obtained by fraud and collusion between appellee and Hamilton, in that Hamilton, knowing appellee had no valid claim against the Bailey estate, knowing that he had been paid in full

for all services he had rendered, knowing of the existence of the valid defenses to his claim, as pleaded by appellant, and knowing that it was the intention of appellee to use the judgment as a basis of recovery in this suit, voluntarily entered his appearance in said cause, permitted judgment to be rendered against him without interposing any opposition or defense thereto, and without giving appellant notice of the suit, but, fraudulently colluding with appellee, permitted the judgment to be rendered for the purpose of cutting off and preventing appellant from interposing said defenses.

Appellee replied by supplemental petition, in which he urged general and special exceptions to the effect that no facts were alleged by appellant showing want of jurisdiction of the court to pronounce the judgment; that the allegations of fraud in regard to the procurement of the judgment did not show such facts as would warrant the court in not giving the judgment full faith and credit; that appellant's allegations as to the laws of the state of Oklahoma, requiring claims against an estate to be presented to the administrator before suit, constituted no defense to the judgment, but was an attempt to go behind the judgment and attack it on its merits; that the judgment was conclusive as against all matters plead in defense; and that the answer of appellant was an attempt to deny full faith and credit to the judgment rendered by the Oklahoma court, contrary to section 1, article 4, of the Constitution of the United States; and that the matters set up in appellant's answer alleging fraud in the procurement of the judgment were concluded by the judgment; that the same was an attempt to go behind the judgment and attack it on its merits, thus denying to it full faith and credit; that the fraud alleged was intrinsic; and that the judgment could not be successfully attacked, if at all, for any reason other than fraud of an extrinsic nature.

The court overruled appellant's special exceptions to the second amended petition of appellee, and sustained the special exceptions urged by appellee to appellant's third amended answer. On the trial, the only evidence offered by appellee to prove his claim was a copy of the petition filed in the suit of appellee against Hamilton, executor, in the district court of Pottawatomie county, Okl., a copy of the waiver of service by Hamilton in that cause, and a copy of the judgment rendered in favor of appellee against Hamilton. The court below, on this evidence, rendered judgment agaist appellant as administrator for $6,000, with 6 per cent. interest per annum from January 23, 1923, and costs of suit, and directed that the same be certified to the probate court of Grayson county for payment in due course of administration.

The net result of the rulings of the court

on exceptions and the judgment rendered by the court on the evidence, was to the effect that the judgment rendered by the district court of Pottawatomie county, Okl., in favor of appellee against Hamilton, was conclusive on appellant as administrator in Texas, and cut off all defenses; that the alleged collusion, conspiracy, and fraud, practiced by appellee and Hamilton in procuring the judgment, could not be pleaded as a defense to appellee's suit on the judgment, and that appellant could not be permitted to show that appellee's claim was not valid or had been paid, nor could he be permitted to urge any of the other defenses pleaded by him.

Appellant, by appropriate assignments and propositions, challenges the correctness of the rulings and judgment of the court below, and, as grounds for reversal, contends, in substance (1) that the judgment of the district court of Pottawatomie county, Okl., on which the judgment below was rendered against appellant, is void because the court which rendered it was without jurisdiction, and that the invalidity of the judgment could be pleaded as a defense when sued on in Texas; (2) that the alleged fraud practiced in procuring the judgment could be pleaded as a defense to the suit filed by appellee against appellant, and that it is immaterial whether the attack be called direct or collateral; (3) that the judgment rendered against Hamilton was not a valid or enforceable claim against appellant as administrator of the estate, was not admissible in evidence against him as proof of any claim against the estate.

These propositions will be discussed in the order mentioned:

1. The courts of the country, state and federal, are unanimous in their agreement on the proposition that a judgment sued on in a state other than the state where rendered may be opened up for inquiry into the jurisdiction of the court rendering the same; that neither the Constitution (section 1, art. 4) guaranteeing that full faith and credit shall be given in each state to the public acts, records, and judicial proceedings of every other state, nor the act of Congress passed in pursuance thereof, prevents an inquiry into the jurisdiction of the court rendering the judgment over either the person, subject-matter, or the res, when the action is in rem. D'Arcy v. Ketchum, 52 U. S. (11 How.) 165, 13 L. Ed. 648; Thompson v. Whitman, 85 U. S. (18 Wall.) 457, 21 L. Ed. 897; Simmons v. Saul, 138 U. S. 439, 11 S. Ct. 369, 34 L. Ed. 1062; Reynolds v. Stockton, 140 U. S. 254, 11 S. Ct. 773, 35 L. Ed. 464; Norwood v. Cobb, 15 Tex. 501; Chunn v. Gray, 51 Tex. 114; Redus v. Burnett, 59 Tex. 581.

[1] In support of the contention that the judgment of the district court of Pottawatomie county, Okl., sued on in this case, was void because the court rendering the same was without jurisdiction, appellant specially pleaded articles 6339, 6342, 6343, 6344, 6345, 6346, and 6350 of the Statutes of Oklahoma, which, in substance, require the executor or administrator to indorse his allowance or rejection on a claim when presented to him properly verified. If the claim is allowed, it shall then be presented to the judge of the county court for his approval, who is required to indorse thereon whether approved or rejected. Every claim allowed by the executor or administrator, and approved by the court, must, within 30 days thereafter, be filed in the county court for classification and payment in course of administration. If the claim is rejected by either the executor, administrator or judge of the county court, the holder is required, within three months, to bring suit against the executor or administrator in a court of proper jurisdiction according to the amount involved. It is further provided that no claim shall be allowed by the executor or administrator or by the judge that is barred by limitation, and that no holder of any claim against an estate shall maintain an action thereon unless the claim is first presented to the executor or administrator.

These statutes of Oklahoma prescribing the procedure for the proof, presentation, allowance, rejection, and suit on claims against estates are in substance the same as the statutes of this state on the subject, the difference being in verbiage and not in meaning. The courts of this state are uniform in holding that the district court is without jurisdiction to entertain a suit or to render judgment on a claim which has not been presented and disallowed in the manner required by the statute, and that it is essential in such a suit, not only that the petition contain the necessary allegations with reference to the disallowance, but that proof must be made. In Mortgage Co. v. Jackman, 77 Tex. 622, 14 S. W. 305, the Supreme Court said:

"* * * It is only when 'a claim for money' against the estate of a deceased person has been rejected by the administrator that the holder of the claim is entitled to bring an independent suit for its establishment." And, of course, it is essential in such cases, not only that the petition contain an allegation of the presentation and rejection of the claim, but it must be proven.

In Whitmire v. Powell, 117 S. W. 433, this court, in an opinion by Associate Justice Talbott, said:

"By the statutes of this state relating to estates of deceased persons, every claim for money against a testator or intestate must be presented to the executor or administrator of the estate, accompanied by an affidavit in writing that the claim is just and that all legal offsets, payments, and credits known to the affiant have been allowed; * * * Without such presentation the executor or administrator is not authorized to allow, nor shall the county

judge approve, the same. * * * By a number of decisions, beginning with Cummings v. Jones, Dall. Dig. (Tex.) 532, it has been held that such suit cannot be maintained unless the claim has been presented and rejected. Hall v. McCormick, 7 Tex. 269; Millican v. Millican, 15 Tex. 460; Fulton v. Black, 21 Tex. 424; Wiley v. Pinson, 23 Tex. 486; Mortgage & Investment Co. v. Jackman, 77 Tex. 622, 14 S. W. 305; Bank v. Higgins, 72 Tex. 66, 9 S. W. 745."

In Ralston v. Stainbrook (Tex. Civ. App.) 187 S. W. 413, the court, to the same effect, said:

"The probate court in a pending administration has exclusive original jurisdiction over claims and liens against the estate. The remedy, upon rejecton of the lien by the administrator, is in the probate court. The district courts have no jurisdiction over the management of an estate in administration except on appeal." Rogers v. Kennard, 54 Tex. 30; George v. Ryon, 94 Tex. 317, 60 S. W. 427; Putney v. Livingston (Tex. Civ. App.) 192 S. W. 259.

The Supreme Court of Oklahoma, construing the statutes of that state on the subject, announced the same doctrine in American Trust Co. v. Chitty, 36 Okl. 479, 129 P. 53, and in Jones v. Woodward, 50 Okl. 704, 151 P. 587. Thus we find that the law, both in Texas and Oklahoma, requires that before a suit can be maintained on a claim against an estate, the same must have been presented and rejected as the statutes require, in that this is an essential jurisdictional fact that must be alleged and proven. It follows, necessarily, that any judgment rendered by a court where this essential jurisdictional fact is lacking, is void.

[2, 3] Appellee contends that, because the district court is a court of general jurisdiction, it must be conclusively presumed that all prior requisites to the rendition of the judgment had been fulfilled. This states the general rule correctly. Strickland v. Sandmeyer, 21 Tex. Civ. App. 351, 52 S. W. 87; Chitty v. Gillett, 46 Okl. 724, 148 P. 1048, L. R. A. 1916A, 1181. But the district court in probate matters is not a court of general but of appellate jurisdiction, and of special powers; therefore its jurisdiction in such cases must be made to appear affirmatively. The entire record in the suit of appellee against Hamilton in the Oklahoma district court is before us; that is, the original petition filed in the suit, the acceptance of service by Hamilton, the defendant, and the judgment of the court, and it nowhere appears from either the petition nor from the recitals in the judgment entry that the prerequisites to the exercise of jurisdiction by the district court had been fulfilled. On the contrary, considering the entire record, it reasonably appears to us that appellee ignored the probate court where the estate was being administered, and proceeded independently and primarily in the district court. To indulge the presumption that all requisites to the rendition of the judgment by the district court in Oklahoma had been fulfilled, prior to the institution of the suit by appellee against Hamilton, would, in our opinion, contradict the meaning and effect of the record. Fowler v. Simpson, 79 Tex. 611, 15 S. W. 682, 23 Am. St. Rep. 370.

Appellee makes the further contention that the statutes of Oklahoma, specially pleaded by appellant, prescribe the procedure for presenting and establishing claims against an estate that arose prior to the granting of letters, and that they have no application to claims, such as the one in suit, contracted for expenses after the granting of letters. Appellee invokes the presumption that obtains in the absence of proof, that the law of Oklahoma, controlling the subject, is the same as the law of this state, and insists that under the provisions of article 3455, Revised Statutes, appellee was not compelled to present his claim to the executor or to the court before bringing suit. The pertinent part of article 3455 reads as follows:

"The provisions of this chapter respecting the presentation of claims shall not be so construed as to apply to * * * any claim that accrues against the estate after the granting of letters testamentary or of administration for which the executor or administrator has contracted."

Prior to the enactment of article 3455 in 1879, our courts held that an attorney rendering services to an estate could look to the estate or directly to the administrator for payment. If he claimed the indebtedness against the estate, it was incumbent upon him to authenticate and present the claim for allowance and classification as other debts against the estate, but, if he looked to the administrator for his pay, the charge became an item to be included in the account of the administrator. It will be observed, however, that in either event the probate court had original jurisdiction to pass on the validity, amount, and reasonableness of the claim. Portis v. Cole, 11 Tex. 157, 158; Jones v. Lewis, 11 Tex. 363, 364; Price v. McIver, 25 Tex. 770, 78 Am. Dec. 558; Gammage v. Rather, 46 Tex. 105.

After the enactment of article 3455, the Supreme Court, in Reinstein v. Smith, 65 Tex. 248, in a suit to collect a claim for expenses of administration, contracted by the administrator, held that:

"Such a claim becomes a claim against the estate which an executor may approve, and the probate court allow and cause to be paid, or upon which, in the event this be refused, a suit may be instituted in any court having jurisdiction."

Under this construction of the statute, it is evident that the holder of such a claim

may (but is not compelled to) pursue the method of procedure prescribed for the collection of claims that accrue prior to the granting of letters, or he may proceed independently and directly in the probate court to have his claim allowed and classified for payment, or the executor or administrator may include the claim in an account under oath filed in court, as provided in articles 3623, 3624, Revised Statutes. It is plain, however, that each of these routes leads unerringly to the probate court as the court of exclusive original jurisdiction to pass on the validity and amount of claims, and to classify them for payment.

These statutes deal with the several methods of procedure that may be availed of in probating expense claims against estates. The Constitution, however, established the jurisdiction in which the procedure must originate. Article 5, § 16, of the Constitution is as follows:

"* * * The county court shall have the general jurisdiction of a probate court; they shall probate wills, appoint guardians of minors, idiots, lunatics, persons non compos mentis, and common drunkards; grant letters testamentary and of administration; settle accounts of executors; transact all business appertaining to deceased persons, minors, idiots, lunatics, persons non compos mentis, and common drunkards, including the settlement, partition and distribution of estates of deceased persons." Revised Statutes, article 3206.

The jurisdiction of the district court in probate matters is appellate. Constitution, art. 5, § 8; Revised Statutes, arts. 1716 and 3207.

Appellee, in his answer, attacked the validity of the judgment sued on by demurrers and by special defense, in which he alleged and sought the opportunity of showing want of jurisdiction in the court rendering the judgment. His demurrers were overruled, and his special answer raising the issue was stricken out on demurrers. In these rulings we believe the trial court committed error.

[4] 2. There exists a conflict in the decisions of the courts as to whether, under the full faith and credit provision of the Constitution of the United States (section 1, art. 4), and the Act of Congress (U. S. Comp. St. § 1519), a judgment, when sued on in another state, may be impeached for fraud perpetrated in its procurement. The courts of this state hold, and, as we believe, in unison, with the decided weight of authority, that fraud practiced in procuring the rendition of a judgment may be urged as a complete defense to an action brought thereon in another state, and especially does this seem to be the rule in states where law and equity jurisdictions are blended as in this state. Norwood v. Cobb, 15 Tex. 501; Drinkard v. Ingram, 21 Tex. 650, 73 Am. Dec. 250;

Norwood v. Cobb, 24 Tex. 553; Babcock v. Marshall, 21 Tex. Civ. App. 145, 50 S. W. 728; Vann v. Calcasieu T. & S. Bank (Tex. Civ. App.) 204 S. W. 1063.

The following excerpts show clearly the holding of our courts:

In Drinkard v. Ingram, supra, the court said:

"Fraud is a defense which is cognizable as well in courts of law as of equity; and, it is said, it is even more odious than force; it annuls all contracts, and even the most solemn acts and judgments of courts, which are infected with it. If it be shown that the judgment was obtained by fraud, it is scarcely necessary to say it cannot afford the basis of a recovery, though it may have been rendered upon a just demand. If fraudulently obtained, whether upon a demand which was well or ill founded is immaterial, as respects the plaintiff's right to recover upon it in this action, it cannot authorize or support a recovery for the sum for which judgment might have been rightfully rendered for the plaintiff."

In Babcock v. Marshall, 21 Tex. Civ. App. 145, 151, 50 S. W. 728, 730, 731, the court said:

"The equitable and legal jurisdictions of the courts of this state are blended, and, where the causes of action or the defenses thereto are both legal and equitable, they can be determined and adjudicated and settled in the one controversy. When the plaintiff came into the courts of this state by suit upon his judgment, he submitted himself to their jurisdiction, subject to all the rules of pleading and practice that prevail here; and these rules permit a defendant, in a controversy of this character, to plead in defense or by a cross action, in order to prevent a recovery by the plaintiff, the same state of facts that he could have urged if he had taken the initiative by bringing suit seeking to restrain his opponent."

The same doctrine has been announced in other states: Levin v. Gladstein, 142 N. C. 482, 55 S. E. 371, 32 L. R. A. (N. S.) 905, 115 Am. St. Rep. 747. In a note to this case many decisions are collated and reviewed supporting the doctrine: Cohn, Baer & Berman v. Bromberg, 185 Iowa, 298, 170 N. W. 478; Gordon v. Hillman, 47 Cal. App. 571, 191 P. 62; Hudson v. Sheafe, 41 S. D. 475, 171 N. W. 321; Bimeler v. Dawson, 4 Scam. (Ill.) 536, 39 Am. Dec. 430; Dunlap v. Cody, 31 Iowa, 260, 7 Am. Rep. 129; Eaton v. Hasty, 6 Neb. 419, 29 Am. Rep. 365; Dobson v. Pearce, 12 N. Y. 156, 62 Am. Dec. 152; Marx v. Fore, 51 Mo. 69, 11 Am. Rep. 432.

The following from 15 R. C. L. 935, is a fair statement of the doctrine approved by the great weight of authority:

"But the weight of authority today is that a judgment of another state, relied on as a cause of action, may be impeached on the ground that it was obtained by fraud unless the parties raising the question of fraud are estopped from availing themselves of it by rea-

son of participation in such fraud. In a few instances the courts, while recognizing the general rule, have limited its application by holding that the defense of fraud is not admissible unless it could have been received in the courts of the jurisdiction wherein the judgment was rendered. If in the jurisdiction in which a judgment is recovered the courts would enjoin a judgment obtained by fraud, an equitable defense on the ground of fraud may be interposed in an action on the judgment in another state in which legal and equitable rights and remedies are administered in one court and in one form of action. Since fraud may go to the very question of jurisdiction, it seems safe to say, however, that a judgment rendered in another state may be resisted on the ground of fraud which goes to the jurisdiction of the court to render the questioned judgment either with respect of the subject matter or of the person; or which constitutes a fraud upon the law of the forum; or which operates to deprive the party against whom the judgment was rendered of an opportunity to defend the suit when he had a meritorious defense to it."

We find, however, an apparent conflict in the decisions of the Supreme Court of the United States on the subject. The following seem to announce the doctrine that fraud in procuring a judgment may be urged as a defense when it is sued on in a sister state: Embry v. Palmer, 107 U. S. 11, 2 S. Ct. 25, 27 L. Ed. 346; Cole v. Cunningham, 133 U. S. 107, 10 S. Ct. 269, 33 L. Ed. 538. While apparently the contrary doctrine was announced in the following decisions: Christmas v. Russell, 5 Wall. 290, 18 L. Ed. 475; Maxwell v. Stewart, 88 U. S. (21 Wall.) 71, 22 L. Ed. 564; Hanley v. Donoghue, 116 U. S. 1, 6 S. Ct. 242, 29 L. Ed. 536; Simmons v. Saul, 138 U. S. 439, 11 S. Ct. 369, 34 L. Ed. 1056.

The apparent conflict between these decisions of the Supreme Court may be due to the fact that these cases were brought up on writs of error to the highest courts of the states, in which the revisory power of the Supreme Court was limited to determining whether a question of law, arising under the Constitution and act of Congress, had been erroneously decided by the state court under the facts, the facts of each case being, in part at least, the laws and usage of courts of the respective state as to the degree of faith, credit, and conclusive effect accorded to judgments in that state.

We are persuaded that each of these cases must have been determined by its own peculiar facts, and the rule of decision that obtained in the courts of the state in which the case originated. This seems to be the doctrine announced by the Supreme Court in Hanley v. Donoghue, 116 U. S. 1, 6 S. Ct. 242, 29 L. Ed. 537. The court said:

"But Congress has not undertaken to prescribe in what manner the effect that such judgments have in the courts of the state in which they are rendered shall be ascertained, but has left that to be regulated by the general rules of pleading and evidence applicable to the subject."

However that may be, we do not feel called upon to either reconcile or account for the conflict in these decisions, but, in making choice between the conflicting views, we unhesitatingly follow the doctrine announced by Chief Justice Fuller in Cole v. Cunningham, 133 U. S. 107, 10 S. Ct. 269, 33 L. Ed. 538, because, in our opinion, it is bottomed on better reason and, besides, is in line with the weight of American authority. After citing the full faith and credit provisions of the Constitution and act of Congress, Judge Fuller, in that case, said:

'This does not prevent an inquiry into the jurisdiction of the court, in which a judgment is rendered, to pronounce the judgment, nor into the right of the state to exercise authority over the parties or the subject matter, nor whether the judgment is founded in, and impeachable for, a manifest fraud."

If, under the law or usage of the courts of Oklahoma, a judgment rendered in that state may be impeached for fraud practiced in its procurement, it may also be impeached, for the same reason when sued on in any court of the United States. This is clearly the doctrine announced by the Supreme Court of the United States in construing the full faith and credit provision of the Constitution and the act of Congress thereunder.

The act of Congress passed in pursuance of section 1, art. 4, of the Constitution, after prescribing the method of verifying judicial records, provides that such record so authenticated "shall have such faith and credit given to them in every other court of the United States as they have by the law or usage of the courts of the state from whence the said records were or shall be taken." Construing this act of Congress, the Supreme Court of the United States, in Crapo v. Kelly, 83 U. S. (16 Wall.) 610, 21 L. Ed. 434, said:

"It is held that the same effect is to be given to the record in the courts of the state where produced, as in the courts of the state from which it is taken." Mills v. Duryee, 7 Cranch, 483, 3 L. Ed. 411; Leland v. Wilkinson, 6 Pet. 317, 9 L. Ed. 412; U. S. v. Johns, 4 Dall. 412, 1 L. Ed. 888.

On the same subject, in Hampton v. McConnel, 3 Wheat. 234, 4 L. Ed. 378, the court said:

"This is precisely the same case as that of Mills v. Duryee, (7 Cranch, 483, 3d L. Ed. 411). The court cannot distinguish the two cases. The doctrine there held was, that the judgment of a state court should have the same credit, validity, and effect, in every other court in the United States, which it had in the state where it was pronounced, and that whatever pleas would be good to a suit thereon in such

state, and none others, could be pleaded in any other court in the United States."

It follows, therefore, that if judgments rendered in Oklahoma are not immune in that state from impeachment for fraud or want of jurisdiction, they cannot be held immune from similar attacks when sued on in this state; also, greater faith, credit, and conclusive effect would have to be given them in this state than is accorded in Oklahoma. This is not the meaning of either the Constitution or the act of Congress, and is not the law. What, then, is the rule in Oklahoma? In Griffin v. Culp, 68 Okl. 310, 174 P. 495, the Supreme Court of Oklahoma announced the following doctrine:

"Where parties by sufficient pleadings assail a judgment for want of jurisdiction because of fraud, extrinsic to the record, practiced by the prevailing party on the court or on the party against whom the judgment was rendered, parol evidence is admissible in support of such pleadings, and it is immaterial whether such an attack be denominated 'direct' or 'collateral.'"

In McIntosh v. Holtgrave, 79 Okl. 66, 191 P. 742, the rule just announced was reaffirmed. The court said, in part:

"An attack upon a judgment for fraud in its procurement is a direct attack over which courts of equity take jurisdiction, and no well-considered case can be found in which such jurisdiction is denied."

These decisions from the Supreme Court of Oklahoma line that state up with the weight of authority in this country, and are sufficient to show that judgments rendered by the courts of that state may be impeached both for fraud practiced in their procurement, and want of jurisdiction in the court rendering same.

[5] The right to relief against a judgment procured by fraud depends upon broad principles of equity that prevail the country over, and of which this court will take judicial knowledge. We may look to the reported cases from the Supreme Court of Oklahoma in· order to determine what, if any, application they make of these general principles of equity in granting similar relief. If it is said, however, that it is not permissible for us to look to the reported cases from that state, in order to determine the degree of faith and credit given judgments under its laws and the usage of its courts, the answer to such contention is that, in the absence of plea and proof, we must assume as a fact that the law and usage of courts of Oklahoma are the same as in this state, and thus we may arrive at the fact that judgments rendered in Oklahoma are not immune from being impeached for fraud practiced in their procurement, any more than they are in this state.

[6] Appellee contends that his exceptions to the answer of appellant, in which fraud in procuring the judgment sued on was alleged, were properly sustained, because appellant's allegations were vague, general, indefinite, were conclusions of the pleader, and failed to set forth facts sufficiently showing why full faith and credit should not be given the judgment. We have heretofore, in stating the case, set forth the substance of the answer of appellee alleging fraud. In our opinion the plea, when considered as a whole, was sufficiently specific in its allegations and that this contention of appellee cannot be sustained.

For the reasons stated, we are of the opinion that the court erred· in sustaining exceptions to appellant's answer alleging fraud in procuring the rendition of the judgment in favor of appellee against Hamilton, executor.

[7] 3. The discussion thus far has proceeded on the assumption that the judgment sued on, if valid, is as binding on appellant, ancillary administrator, as it is on Hamilton, the· executor, but appellant, by proper assignments and propositions, contends that the judgment is in no sense binding on him, and was not even admissible as evidence to establish the claim against the assets of the estate in his custody.

As heretofore shown, the only evidence offered on the trial below in support of appellee's claim was the judgment rendered in the district court of Oklahoma in his favor against Hamilton, executor; the original indebtedness was not presented. It is insisted, by appellee that privity exists between appellant, ancillary administrator, and Hamilton, Oklahoma executor, and therefore the judgment against Hamilton was a proper foundation for this suit. ˙This contention is based on the decision of the Commission of Appeals (approved by the Supreme Court) in Pendleton v. Hare,· 231 S. W. 334. The Pendleton-Hare Case, in our opinion, differs materially from the case at bar, in this: Pendleton sought to recover on his original claim the value of legal services rendered the Bailey estate in Oklahoma under contract of employment with Hamilton, the executor. As the funds of the estate in Oklahoma were exhausted, Pendleton presented his claim for allowance to Silas Hare, administrator, and, on its being rejected by him, the suit was instituted. The Court of Civil Appeals decided the case against Pendleton, under the view that no·privity existed between Hamilton, executor, and Hare, ancillary administrator, applying to the case the rule of decision that obtains between administrators appointed in different states. The court said:

"But it is well settled that there is no privity between an executor in one state and an administrator controlling assets left by the same

decedent situated in another state." 214 S. W. 951.

The Supreme Court reversed the judgment of the Court of Civil Appeals under a well-recognized distinction between the two classes of cases; that is, it is held by courts generally that no privity exists between administrators of the same estate appointed by different jurisdictions; that they are several, distinct, and have no common liability for expenses incurred by each (24 C. J. 1117, note 89), while on the other hand, it is generally held that privity does exist between executors of the testator in different states; that they bear the same responsibility to creditors as if there were only one executor; and, as an ancillary administrator is in legal contemplation an executor, it is further held that he, too, is in privity with the executor of the domicile. 24 C. J. 1118, note 96. In order to understand the real point in the holding of the Commission of Appeals, the following excerpt is reproduced:

"In defense of the action, defendant in error further urges that, though the attorney's fee may be a proper charge against the estate in Oklahoma, it can form no basis for a claim against the administrator in Texas, as there is no privity between the executor in Oklahoma and the ancillary administrator in Texas. In support of this contention he relies upon Stacy v. Thrasher, 6 How. 44, 12 L. Ed. 337, and McLean et al. v. Meek, 18 How. 16, 15 L. Ed. 277, which established the rule that a judgment against an administrator in one state will not support an action against another administrator in a different state, because, in contemplation of law, there is no privity between them. The correctness of the rule announced in those cases is not questioned; but it has no application to the facts of this case. The distinction, as regards privity between administrators appointed by law under different political jurisdictions and privity between testamentary executors, is clearly drawn in Hill v. Tucker, 13 How. 458, 14 L. Ed. 223, 231 S. W. 334."

We have no fault to find with the doctrine announced in Pendleton v. Hare. The disposition of that suit, based as it was on the original indebtedness, was correct under the rule announced in Hill v. Tucker, supra, 13 How. 458, 14 L. Ed. 223, as well as in other well-considered cases. Low v. Bartlett (Mass.) 8 Allen, 259; Richards v. Blaisdell, 12 Cal. App. 101, 106 P. 732. When it is said, however, that privity exists between Hamilton, the Oklahoma executor, and Silas Hare, the Texas administrator, what is meant, and where does this doctrine lead? Was the judgment obtained by appellee against Hamilton, when introduced as evidence in this suit, sufficient to establish against appellant, as administrator, the alleged claim of appellee against the Bailey estate? We think not.

In the case of Hill v. Tucker, followed by the Commission of Appeals in deciding Pen-

dleton v. Hare, the doctrine was announced that privity exists between executors in different jurisdictions, and the reason for the rule is there stated. The court also announced the doctrine that, as between administrators deriving their commissions to act from different political jurisdictions, there exists no such privity. The court quotes at length from a former decision of that court in Stacy v. Thrasher, 6 How. 44, 12 L. Ed. 337, in which the reason for the rule as to the want of privity between administrators was stated. The court then adds:

"For the same reasons, notwithstanding the privity that there is between executors to a testator, we do not think that a judgment obtained against one of several executors would be conclusive as to the demand against another executor, qualified in a different state from that in which the judgment was rendered. But such a judgment may be admissible in evidence in a suit against an executor in another jurisdiction, for the purpose of showing that the demand had been carried into judgment in another jurisdiction, against one of the testator's executors, and that the others were precluded by it from pleading prescription or the statute of limitations upon the original cause of action."

The discussion on this point was concluded by the court, as follows:

"When, then, the court below rejected, as inadmissible in evidence in this case, the judgment obtained in Virginia against Allen and Johnson, the executors of Robinson in that state, we think it erred, and that it should have been admitted for the purposes mentioned."

Thus we see that the holding of the court was to the effect that the judgment against the Virginia executors was inadmissible against the Louisiana executor, except in so far as it was responsive to the plea of limitation. The case of Richards v. Blaisdell, 12 Cal. App. 101, 106 P. 732, was an action on a judgment rendered by a probate court of the state of Minnesota against the executor of the domicile of the testator. The case is identical with the case at bar, in that the judgment against the executor, rendered in Minnesota, was relied on as evidence of the claim in suit against the ancillary administrator in California. The trial court held that the certified copy of the record from Minnesota allowing the claim, which had the force and effect of a judgment, was sufficient to establish the claim against the estate in the hands of the administrator in California, the identical holding of the trial court in this case; that is, that the judgment in favor of appellee against Hamilton, the executor, rendered by the district court in Oklahoma, was sufficient evidence to establish appellee's claim against appellant, the ancillary administrator, in Texas.

The Supreme Court of California, in re-

versing the trial court, basing its ruling on the decisions of the Supreme Court of the United States (Stacy v. Thrasher, and Hill v. Tucker, supra), held that the judgment rendered in Minnesota against the executor was not only not conclusive upon the California administrator, but that it could not be made the basis of an action against him, or even evidence to establish the indebtedness. We assent to the correctness of the doctrine of these cases, and therefore conclude that the judgment in favor of appellee against Hamilton was not conclusive against appellant, and that the trial court erred in rendering judgment against him on the evidence.

The judgment of the court below will be reversed and the cause remanded, for the reasons hereinbefore indicated. Appellee may prosecute his suit on the original claim against appellant as ancillary administrator, under the doctrine of privity announced in Pendleton v. Hare, supra, but in such proceedings, appellant should be permitted to urge all valid defenses, legal and equitable, as though the judgment in question had never been rendered. Under our view, the judgment is not binding upon appellant, and is not even admissible in evidence for the purpose of establishing the validity and existence of the claim, but, as held in Hill v. Tucker, supra, it would be admissible in answer to the plea of limitation.

Reversed and remanded.

JONES, C. J., disqualified and not sitting.